COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| STATE OF OHIO | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. John W. Wise, J. |
| Plaintiff-Appellee | : | Hon. Craig R. Baldwin, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 16-CA-95 |
| DANIEL B. BRAGG | : |  |
|  | : |  |
| Defendant-Appellant | : | OPINION |

CHARACTER OF PROCEEDING: Criminal appeal from the Licking County Court of Common Pleas, Case No. 16CR311

JUDGMENT: Affirmed

DATE OF JUDGMENT ENTRY: July 3, 2017

APPEARANCES:

For Plaintiff-Appellee

PAULA SAWYERS
Assistant Prosecuting Attorney
20 S. Second Street, 4th Floor
Newark, OH 43055

For Defendant-Appellant

KEVIN GALL
Burkett & Sanderson, Inc.
73 North Sixth Street
Newark, OH 43055

*Gwin, P.J.*

{¶1}    Appellant Daniel Bragg ["Bragg"] appeals his conviction and sentence after a jury trial for one count of rape of a minor under 13 years old.

*Facts and Procedural History*

{¶2}    This case involves allegations of inappropriate sexual conduct between Bragg and the alleged victim, an eleven-year-old girl.  The testimony of the alleged victim was that Bragg forced her to perform oral sex on him, he would perform oral sex on her, and he would engage in intercourse with the victim.  It is alleged that these acts took place from October 2015 to May 2016.  These acts allegedly occurred in Bragg's home. Detective Mike Collins of the Licking County Sheriff's Office was given consent to search Bragg's home.  A camisole and underwear consistent with the victim's size was found in Bragg's bedroom.  Bragg admitted to Detective Collins that he and the victim would kiss.  (1T. at 160).  Detective Collins collected some of the victim's underwear from her father.  The underwear showed signs of bloodstains on them and were submitted to BCI for testing.

{¶3}    Bragg was indicted in a five-count indictment charging him with Rape of a minor under the age of thirteen.  After considering the evidence and the arguments of counsel, the jury returned a "guilty" verdict as to Count One of the Indictment, and "not guilty" verdicts as to Counts Two through Five of the Indictment.  Mr. Bragg was then sentenced to a mandatory term of ten years to life imprisonment.

*Assignments of Error*

{¶4}    Bragg presents four assignments of error for our review:

**{¶5}** "I. THE DEFENDANT-APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF TRIAL COUNSEL WHEN COUNSEL FAILED TO OBJECT TO HEARSAY TESTIMONY.

**{¶6}** "II. THE DEFENDANT-APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF TRIAL COUNSEL WHEN COUNSEL FAILED TO OBJECT TO LEADING QUESTIONS DURING DIRECT EXAMINATION.

**{¶7}** "III. THE DEFENDANT-APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF TRIAL COUNSEL WHEN COUNSEL FAILED TO OBJECT TO TESTIMONY FROM KELLY MORRISON THAT EXCEEDED THE SCOPE OF HER KNOWLEDGE AND EXPERTISE AND WAS UNFAIRLY PREJUDICIAL.

**{¶8}** "IV. THE CUMULATIVE EFFECT OF TRIAL COUNSEL'S ERRORS SO PREJUDICED THE DEFENDANT-APPELLANT THAT HE WAS DEPRIVED OF HIS CONSTITUTIONAL RIGHT TO A FAIR TRIAL."

## I, II & III

**{¶9}** Bragg's first, second and third assignments of error concern ineffective assistance of trial counsel.  Subsumed within this generalized objection are three challenges to trial counsel's representation.  Specifically, Bragg contends that: (1) trial counsel failed to object to hearsay testimony, (2) trial counsel failed to object to the state's use of leading question, and (3) trial counsel failed to object to an expert witness testifying beyond her experience and expertise.

### *Burden of Proof.*

**{¶10}** A claim of ineffective assistance of counsel requires a two-prong analysis. The first inquiry is whether counsel's performance fell below an objective standard of

reasonable representation involving a substantial violation of any of defense counsel's essential duties to appellant. The second prong is whether the appellant was prejudiced by counsel's ineffectiveness. *Lockhart v. Fretwell*, 506 U.S. 364, 113 S.Ct. 838, 122 L.Ed.2d 180(1993); *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674(1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373(1989).

{¶11} In order to warrant a finding that trial counsel was ineffective, the petitioner must meet both the deficient performance and prejudice prongs of *Strickland* and *Bradley. Knowles v. Mirzayance*, 556 U.S. 111, 129 S.Ct. 1411, 1419, 173 L.Ed.2d 251(2009).

{¶12} Recently, the United States Supreme Court discussed the prejudice prong of the *Strickland* test,

With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id., at 694, 104 S.Ct. 2052. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." Id., at 693, 104 S.Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id., at 687, 104 S.Ct. 2052.

"Surmounting *Strickland'*s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. ——, ——, 130 S.Ct. 1473, 1485, 176 L.Ed.2d 284 (2010). An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the *Strickland* standard must be applied with scrupulous care, lest "intrusive

post-trial inquiry" threaten the integrity of the very adversary process the right to counsel is meant to serve. *Strickland*, 466 U.S., at 689–690, 104 S.Ct. 2052. Even under de novo review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is "all too tempting" to "second-guess counsel's assistance after conviction or adverse sentence." Id., at 689, 104 S.Ct. 2052; *see also Bell v. Cone*, 535 U.S. 685, 702, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002); *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom. *Strickland*, 466 U.S., at 690, 104 S.Ct. 2052.

*Harrington v. Richter*, __U.S.__, 131 S.Ct. 770, 777-778, 178 L.Ed.2d 624(2011).

**{¶13}** We note that any error will be deemed harmless if it did not affect the accused's "substantial rights." Before constitutional error can be considered harmless, we must be able to "declare a belief that it was harmless beyond a reasonable doubt." *United States v. Chapman,* 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705(1967). Where there is no reasonable possibility that unlawful testimony contributed to a conviction, the error is harmless and therefore will not be grounds for reversal. *State v. Conway,* 108 Ohio St.3d 214, 2006-Ohio-791, 842 N.E.2d 996, ¶78, citing *Chapman; State v. Lytle*, 48 Ohio St.2d 391, 358 N.E.2d 623(1976), paragraph three of the syllabus, *vacated in part*

*on other grounds Lytle v. Ohio,* 438 U.S. 910, 98 S.Ct. 3135, 57 L.Ed.2d 1154(1978).See also, *State v. Jones*, 135 Ohio St.3d 10, 2012-Ohio-5677, 984 N.E.2d 948, ¶177.

**1. Failure to object to hearsay.**

**{¶14}** Bragg argues that his trial counsel was ineffective because he failed to object to hearsay statements. He points to two statements made by Joseph Blue during his testimony. Specifically the first statement, "My ex-wife catching Dan kissing my daughter on the lips" and the second statement "I found my daughter and my ex-wife in my driveway and being told that my daughter has been sexually assaulted by Dan Bragg."

**{¶15}** "'The failure to object to error, alone, is not enough to sustain a claim of ineffective assistance of counsel.'" *State v. Fears*, 86 Ohio St.3d 329, 347, 715 N.E.2d 136 (1999), *quoting State v. Holloway*, 38 Ohio St.3d 239, 244, 527 N.E.2d 831(1988). *Accord, State v. Hale*, 119 Ohio St.3d 118, 2008-Ohio-3426, 892 N.E.2d 864, ¶233. A defendant must also show that he was materially prejudiced by the failure to object. *Holloway*, 38 Ohio St.3d at 244, 527 N.E.2d 831.

**{¶16}** As to the first statement, Bragg admitted kissing the victim when interviewed by Detective Collins. Therefore, any error in the admission of the statement during Blue's testimony that Blue's ex-wife caught Bragg kissing the victim on the lips was harmless beyond a reasonable doubt. Accordingly, Bragg is unable to demonstrate he was prejudiced by counsel's ineffectiveness in failing to object to this testimony.

**{¶17}** Bragg also contends he was prejudiced by counsel's failure to object to Blue's testimony that Blue was "told that my daughter has been sexually assaulted by Dan Bragg."

**{¶18}** "Hearsay" is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Evid.R. 801(C). Hearsay is generally not admissible unless it falls within one of the recognized exceptions. Evid.R. 802; *State v. Steffen* (1987), 31 Ohio St.3d 111, 119, 509 N.E.2d 383.

**{¶19}** "The hearsay rule ... is premised on the theory that out-of-court statements are subject to particular hazards. The declarant might be lying; he might have misperceived the events, which he relates; he might have faulty memory; his words might be misunderstood or taken out of context by the listener. And the ways in which these dangers are minimized for in-court statements-the oath, the witness' awareness of the gravity of the proceedings, the jury's ability to observe the witness' demeanor, and, most importantly, the right of the opponent to cross-examine-are generally absent for things said out of court." *Williamson v. United States*, 512 U.S. 594, 598, 114 S.Ct. 2431, 2434, 129 L.Ed.2d 476(1994).

**{¶20}** It is unclear whether Blue was referring to his ex-wife or the victim as the person who told him Bragg had sexually assaulted the victim. *See*, 1T. at 110.

**{¶21}** In the case at bar, the victim testified in detail that Bragg sexually abused her. As she testified and was subject to cross-examination, the jury was able to determine her credibility first-hand. Any error in admitting testimony that the victim told Blue or his ex-wife that Bragg sexually abused her is harmless beyond a reasonable doubt because the jury heard the victim accuse Bragg of sexually abusing her during her testimony at trial. Bragg was able to confront and cross-examine the victim concerning her accusations and whether she told Blue or his ex-wife that Bragg had sexually abused her.

"Corroboration of victim testimony in rape cases is not required. *See State v. Sklenar* (1991), 71 Ohio App.3d 444, 447, 594 N.E.2d 88; *State v. Banks* (1991), 71 Ohio App.3d 214, 220, 593 N.E.2d 346; *State v. Lewis* (1990), 70 Ohio App.3d 624, 638, 591 N.E.2d 854; *State v. Gingell* (1982), 7 Ohio App.3d 364, 365, 7 OBR 464, 455 N.E.2d 1066." *State v. Johnson,* 112 Ohio St .3d 210, 217, 2006-Ohio-6404 at ¶ 53, 858 N.E.2d 1144, 1158.

**{¶22}** Accordingly, we find that Blue's testimony did not rise to a level that adversely affected Bragg's substantial rights and did not deprive him of a fair trial. Bragg is unable to demonstrate he was prejudiced by counsel's ineffectiveness in failing to object to this testimony.

**2. Leading questions.**

**{¶23}** Bragg next argues that he was denied ineffective assistance of counsel for trial counsel's failure to object to leading questions posed to Joseph Blue and the victim.

**{¶24}** Evidence Rule 611(C) provides that "[l]eading questions should not be used on the direct examination of a witness except as may be necessary to develop his testimony." This rule places the decision whether to allow leading questions on direct examination within the trial court's discretion. *See* Staff Note, Evid.R. 611(C); *State v. D'Ambrosio,* 67 Ohio St.3d 185, 190, 616 N.E.2d 909, 914(1993). For that reason, the Ohio Supreme Court has held that the failure to object to leading questions does not constitute ineffective assistance of counsel. *State v. Jackson*, 92 Ohio St.3d 436, 449, 751 N.E.2d 946. Further, courts have recognized that due to a trial court's broad discretion to allow leading questions, the decision to not object to leading questions is a trial strategy. "Debatable strategic and tactical decisions may not form the basis of a

claim for ineffective assistance of counsel." *State v. Phillips*, 74 Ohio St.3d 72, 85, 1995-Ohio-171, 656 N.E.2d 643; *State v. Clayton*, 62 Ohio St.2d 45, 402 N.E.2d 1189(1980).

{¶25}  Upon review of the questions cited by Bragg, the questions, many of which though leading, were mainly used to develop the testimony or were inconsequential and trial counsel might well have not wanted to interrupt the proceedings.  (1T. at 104, 108, 112, 116, 135, 136, 138).

{¶26}  Bragg relies on *State v. Poling*, 11th Dist. Portage No. 2004–P–0044, 2006-Ohio-1008, wherein a conviction was reversed based on prosecutorial misconduct, including the use of leading questions.  In *Poling*, however, the use of leading questions was pervasive and egregious.  The appellate court observed that 11 witnesses were presented, leading questions—often supplying testimony—were asked of eight witnesses, and the leading questions were not buttressed by information elicited in the normal manner.  "These questions, with their answers, often formed a substantial part of the witness' performance.  The prosecution would persist in leading, following objections (often sustained) by the trial court.  The prosecution did this with mature, experienced witnesses, such as [a detective].  It did this with its own investigator * * *.  It did this the [the victim's mother], providing her with an answer following a sustained objection.  * * * The prosecution relied so heavily on leading its witnesses, and supplying them with answers, that we cannot see how appellant's conviction could otherwise have been obtained."  Id. at ¶ 27, 29.  The isolated instances of leading questions asked by the prosecutor at Bragg's trial were not analogous to *Poling*.  Having reviewed the record, however, we conclude that the prosecutor resorted to leading questions to move the trial

along, not to influence his witnesses' testimony or to supply them with answers. *See, State v. Ross,* 2nd Dist. Montgomery No. 22958, 2010-Ohio-843, ¶ 109.

**{¶27}** Furthermore, based on the overwhelming evidence of Bragg's guilt, we cannot say that the outcome of Bragg's trial would have been different had defense counsel objected. *See, State v. Flowers,* 8th Dist. Cuyahoga No. 91864, 2009-Ohio-4867, ¶29. Accordingly, we find that the prosecutor's use of leading questions did not rise to a level that adversely affected Bragg's substantial rights and did not deprive him of a fair trial. Bragg is unable to demonstrate he was prejudiced by counsel's ineffectiveness in failing to object to this testimony.

**3. Testimony of expert witness.**

**{¶28}** Bragg argues that the testimony of nurse practitioner Kelly Morrison concerning epilepsy and autism exceeded the scope of her expertise as a pediatric nurse practitioner and Bragg's trial counsel should have moved to exclude such testimony as a violation of Evid.R. 702(B) and Evid.R. 403, as it was unfairly prejudicial. Specifically, Bragg contends that there was no foundation that the witness was qualified through knowledge, skill, experience, training, or education, to discuss the effects of epilepsy on an individuals' short-term and long-term memory. There was no testimony that she was similarly qualified to discuss the effects of autism on a child's ability to communicate.

**{¶29}** Evid.R. 702, which governs the admissibility of expert testimony, states: "A witness may testify as an expert if all of the following apply: (A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons; (B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the

subject matter of the testimony; (C) The witness' testimony is based on reliable scientific, technical, or other specialized information." Evid.R. 702. The proponent of the testimony bears the burden of establishing the witness's qualification.

{¶30} The testimony that Bragg cites as error concern the effects epilepsy can have on the brain and how the victim's developmental delays and autism affected her ability to communicate. Bragg argues that this testimony provided an explanation to the jury as to why the victim did not discuss the allegations that account for four of the counts in the indictment. [Appellant's Brief at 14].

{¶31} The victim's father had testified that the victim had epilepsy and had undergone testing for autism. (1T. at 103-105). He further testified, "She has problems with motor skills, memory lapse. She also has the – not an ability to put a timeline together." (1T. at 104). Further, Blue testified that his daughter has been in behavioral therapy for a year "and they were unable to connect with her, and they had noticed tendencies that were coming out as being autistic." (1T. at 104). Further, the victim attends a behavioral and special needs school. (1T. at 105).

{¶32} Having reviewed the record, however, we conclude that the testimony of Ms. Morrison concerned an explanation for the developmental delays experienced by the victim and how those delays presented themselves during her examination of the victim. The testimony was not beyond the witness's specialized knowledge, skill, experience, training, or education and was not offered for an improper purpose. Further, because the victim testified at trial the jury was able to assess her ability to recall events and communicate those events and how her developmental delays presented themselves during her testimony.

{¶33} Accordingly, we find that the testimony of Ms. Morrison did not rise to a level that adversely affected Bragg's substantial rights and did not deprive him of a fair trial. Bragg is unable to demonstrate he was prejudiced by counsel's ineffectiveness in failing to object to this testimony.

**Conclusion**

{¶34} The claims raised by Bragg do not rise to the level of prejudicial error necessary to find that he was deprived of a fair trial. Having reviewed the record that Bragg cites in support of his claim that he was denied effective assistance of counsel, we find Bragg was not prejudiced by defense counsel's representation of him. The result of the trial was not unreliable nor were the proceedings fundamentally unfair because of the performance of defense counsel. Bragg has failed to demonstrate that there exists a reasonable probability that, had trial counsel objected as he has suggested in his three assignments of error, the result of the trial would have changed. As we have noted, any error in the procedure employed by trial counsel was harmless beyond a reasonable doubt.

{¶35} Braggs first, second and third assignments of error are overruled.

IV.

{¶36} In his fourth assignment of error, Bragg contends that he was denied a fair trial due to cumulative errors by the trial court.

{¶37} In *State v. Brown*, 100 Ohio St.3d 51, 2003–Ohio–5059, 796 N.E.2d 506, the Ohio Supreme Court recognized the doctrine of cumulative error. However, as explained in *State v. Bethel*, 110 Ohio St.3d 416, 2006–Ohio–4853, 854 N.E.2d 150,

¶197, it is simply not enough to intone the phrase "cumulative error." *State v. Sapp*, 105 Ohio St.3d 104, 2004–Ohio–7008, 822 N.E.2d 1239, ¶103.

**{¶38}** Here, Bragg cites the doctrine of cumulative error, lists or incorporates the previous assignments of error, and gives no analysis or explanation as to why or how the errors have had a prejudicial cumulative effect. Thus, this assignment of error has no substance under *Bethel* and *Sapp.*

**{¶39}** Further, where we have found that the trial court did not err, cumulative error is simply inapplicable. *State v. Carter*, 5th Dist. Stark No. 2002CA00125, 2003–Ohio-1313, ¶37. To the extent that we have found that any claimed error of the trial court was harmless, or that claimed error did not rise to the level of plain error, we conclude that the cumulative effect of such claimed errors is also harmless because taken together, they did not materially affect the verdict. *State v. Leonard*, 104 Ohio St.3d 54, 89–90, 2004–Ohio–6235, 818 N.E.2d 229, 270 at ¶ 185.

**{¶40}** As this case does not involve multiple instances of error, Bragg's fourth assignment of error is overruled.

{¶41} For the foregoing reasons, the judgment of the Court of Common Pleas of Licking County, Ohio, is affirmed.

By Gwin, P.J.,

Wise, John, J., and

Baldwin, J., concur