[Cite as *State v. Cook*, 2019-Ohio-3650.]

COURT OF APPEALS
FAIRFIELD COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. Patricia A Delaney, P.J. |
| Plaintiff - Appellee | : | Hon. Craig R. Baldwin, J. |
| | : | Hon. Earle E. Wise, J. |
| -vs- | : | |
| | : | |
| ASHLEY COOK | : | Case No. 18-CA-43 |
| | : | |
| Defendant - Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:             Appeal from the Fairfield County
                                     Municipal Court, Case No. CRB
                                     1602531

JUDGMENT:                            Affirmed

DATE OF JUDGMENT:                    September 9, 2019

APPEARANCES:

For Plaintiff-Appellee                For Defendant-Appellant

DANIEL E. COGLEY                      APRIL F. CAMPBELL
Lancaster City Prosecutor's Office    Campbell Law, LLC
P.O. Box 1008                         545 Metro Place South, Ste. 100
Lancaster, Ohio 43130                 Dublin, Ohio 43017

*Baldwin, J.*

{¶1}    Ashley Cook appeals her conviction for violations of R.C. 2919.22(A) and 2912.22(B)(1), (Endangering Children) and 2903.13(A) (Assault) all misdemeanors of the first degree. Appellee is the State of Ohio.

## STATEMENT OF FACTS AND THE CASE

{¶2}    Appellant was indicted on two counts of endangering children, two counts of complicity to commit child endangering and one count of assault after a day care center discovered what they described as serious bruising on three year old W.K.'s buttocks.  Appellant admitted to spanking W.K. on more than one occasion during a three day period, but denied that contact could create any bruising.  Instead, Appellant and her fiancé, the child's father, blamed a collision with the large family dog that knocked W.K. to the ground.

{¶3}    The State offered the testimony of an emergency room doctor that rejected Appellant's explanation. The doctor concluded the injuries were consistent with child abuse.  The State also provided evidence that W.K. had no bruises before he was left in the custody of Appellant and that the bruises were noticed shortly after he left her custody.

{¶4}    Appellant now asks for reversal of the verdict based upon alleged violations of her state and federal right to confront her accuser, that impermissible hearsay was admitted and that she was improperly prevented from presenting a "corporal punishment" defense.  She also contends the evidence was insufficient and against the manifest weight of the evidence.

{¶5}    W.K. is the son of Melissa Kish and Mathew Kish, born in June 2013.  W.K. had just turned three years old when he and his older sister were delivered to their father's

home on July 10, 2016 for normal visitation.  (W.K.'s parents are divorced.)  Appellant was Mr. Kish's fiancé at that time and had three children of her own, living with her and Mr. Kish.  From July 10 through July 13, when Mr. Kish was at work, Appellant was responsible for the care and supervision of all five children.

{¶6}    W.K. was having difficulty with potty training and he had multiple accidents during the three day period.  His accidents frustrated Appellant and Mr. Kish.  Appellant was particularly frustrated with W.K.'s denial that he had soiled his clothing.  A transcript of Appellant's testimony from a custody hearing involving W.K. reflected Appellant's frustration and confirmed that she spanked him for lying, complaining "That entire weekend he kept peeing either on the floor or in his pants ***' and "I mean, after so many times, it don't make sense why he keeps lying." (Exhibit 8, pp. 319-320). She attempted to limit the number of times she spanked W.K. for this issue, but her testimony would support a conclusion that she struck him several times and that she "*** just did it ***and didn't really think about it."  (Exhibit 8, p. 341).  Later she acknowledged that she may have been "too stressed" "upset" and acted in an "aggressive manner" but she denies striking W.K. too hard.  (Exhibit 8, p. 345).

{¶7}    W.K. exhibited no injuries on his buttocks prior to being left in Appellant's care, according to Mr. Kish.  On Tuesday evening, July 12, Mr. Kish noted bruising that had not been present prior to leaving W.K. with Appellant.  W.K. did not tell Mr. Kish that he was suffering from any soreness or that Appellant had caused him any pain. (Transcript p. 125, lines 10-11; p.126, lines 13-18) and neither Mr. Kish nor Appellant took any action regarding the bruising.  (Transcript p. 125, lines 1-11) W.K. was knocked down

by the family dog during this time and it startled W.K., but Mr. Kish did not believe he suffered any injuries.

{¶8}   In the past, W.K. would have been in pre-school on Tuesday and returned to his Mother's custody, but for reasons not fully disclosed in the record, W.K. stayed with his Father and Appellant an additional day and did not go to preschool on Tuesday. (Transcript p. 101, lines 21-23; p. 152, lines 19-22).

{¶9}   W.K. was delivered to pre-school on Wednesday, July 13, and shortly after arriving he soiled his pants.  One of his teachers, Brittany Sutton, was cleaning him and noticed severe, black, blue, purple and red bruising across his buttocks. Concerned that these bruises might be painful, she asked W.K. if she was hurting while she cleaned and he responded "no." She asked "how did you get your boo-boos" and W.K. responded that "Ashley did it at daddy's house." When asked why, W.K. mentioned something about pottying, but this issue was not pursued any further.

{¶10} Ms. Sutton reported the incident to her supervisor and completed an incident report.  She called Mr. Kish and asked him about the bruising and he confirmed he had seen it, but his response could be best described as indifferent. Ms. Sutton concluded the injuries warranted a report to Child Protective Services.

{¶11} W.K.'s mother came to the daycare that afternoon and for the first time was told about the bruises.  She examined her son, photographed the bruises and took him to the emergency room at Nationwide Children's Hospital.  The physicians at the hospital examined W.K. and completed tests to rule out internal injuries.  W.K. was free from internal injuries, but had several contusions.  The final assessment stated "Given the location and number of the contusions on patient's buttocks, patient's injuries are

consisted (sic) with nonaccidental injury." (Exhibit 6, p. 26). W.K.'s mother called the Fairfield County Sheriff's Office and filed a report on July 14, 2016.

{¶12} The Fairfield County Sheriff's Office contacted Appellant and she appeared at the Sheriff's Office on September 28, 2016. Appellant explained how the family dog had knocked W.K. down in the gravel driveway. Detective Meadows, the interviewing officer, also spoke with them about the spanking administered for the potty training accidents. Appellant described one incident where W.K. vomited and when cleaning that mess discovered that he had soiled his pants. She recited the conversation she had with W.K., asking "did you poop your pants" to which he consistently answered no. She said that she had "had enough" and left W.K. in the room.

{¶13} She explained to Det. Meadows that the collision with the dog caused the bruises but admitted the spanking probably "did not help."

{¶14} On October 5, 2016, the state filed a complaint charging Appellant with violations of R.C. 2903.13, 2919.22 and 2923.03.

{¶15} On May 30, 2017, Appellant filed a motion to suppress the testimony of W.K. and his sister, contending they were not competent to testify due to their young age. Appellant concluded the motion by requesting "an in-camera inspection (sic) of K.B. (sic) to examine the witnesses' ability to testify in the above listed matter or for statements (that may otherwise qualify for a hearsay exception) made by either witness to be used during trial." The record does not contain evidence of an "in camera inspection" of any witness.

{¶16} On June 5, 2017, Appellee filed "State's Pre-Trial Motion on Admissibility of W.K.'s Out-Court-Statement" citing *Ohio v. Clarke*, 135 S. Ct. 2173, 192 L.E.2d 306, 83

USLW 4484 (2015) in support of its contention that W.K.'s statement should be admitted as an exception to the hearsay rule under Evid. R. 807.

**{¶17}** A hearing was conducted on June 29, 2017 and though the trial court opens the hearing by referring to the Appellant's motion to suppress, it is evident that the trial court and the parties conducted some discussions that are not part of the record as the trial court notes:

**{¶18}** "Mr. Shroy, you had filed a motion to suppress. When we were here last time, Mr. Cogley presented the Court with the case of State vs. Clark. You wanted some time to review that matter. What do you want to tell me?" June 29, 2017 Transcript, p. 3, lines 5-9.

**{¶19}** Appellant's counsel conceded that *Ohio v. Clark* was on point, but argued that the statements were not reliable but it is not clear which statements are being discussed. He does reference "a specific allegation that Ashley is the one who spanked him" and seems to contend that because that statement does not appear in the incident report completed by the daycare center, the statement must be deemed unreliable. Counsel also contends the context of an ongoing custody battle undermines the reliability of the statement. The Appellee responds and the court concludes:

> Well, that's for the jury to decide and the trier of fact. I find that State
> vs. Clark is very much on point. The Supreme Court of the United
> States has spoken on 807. I'm going to allow the testimony.

{¶20} In response, Appellant's counsel states: "Your Honor, the Court's making that ruling has not given the defense an opportunity to put on any testimony. I would just note that for the record." The transcript from that hearing contains no request to present testimony, nor any proffer of testimony or evidence.

{¶21} The trial court did not make any findings of fact or refer to the analysis described in Evid. R. 807.

{¶22} While the record is not clear, it is reasonable to conclude that the statement discussed at the June hearing is W.K.'s response to the day care teacher: "Ashley did it at daddy's." That statement is introduced at trial by appellee in its opening statement and is repeated by witnesses from the day care center without any objection by Appellant. In fact, Appellant cross examines one day care worker in such a manner as to suggest that counsel has resigned himself to the admissibility of the statement and will attempt to use it to his client's advantage. He challenges the day care worker's failure to call the authorities after W.K. made this allegation. He continues this strategy of attacking the statement by cross examining W.K.'s father, inquiring as to whether W.K. complained of any pain or mistreatment by Appellant during that weekend. Appellant is also first to reference the statement in closing argument. He states:

> You are hearing from them, well, he said Ashley might have done it.
> That is from what we can detect about 4:00 o'clock when the child's
> mom goes there to pick him up that that sort of statement first comes
> to light because no one talks to the mom, no one seems to do any

investigation, no one calls Child Protective Services, no one calls the

sheriff's deputies.

Transcript, p. 216, lines 10-16.

{¶23} Later, Appellant's counsel mentions the statement once more in an argument that can be interpreted as an attempt to discredit the people reporting the statement and to undermine any weight the jury might give to the day care worker's report:

And when you look at the evidence and you think of what these

witnesses said, and more importantly didn't say because you're not

hearing that he repeated Ashley did this to me. You're not even

hearing someone say we had a forensic examiner go in and talk to

him. Nobody did that. You're not even hearing anybody talk about

him saying his (indiscernible). You heard a few daycare teachers say

he said Ashley spanked him. We know Ashley spanked him.

P. 222, lines 16-24; p. 223, line 1.

{¶24} Appellee did not mention W.K.'s statement in closing, but did speak about it in rebuttal, presumably because Appellant's counsel had used it in his client's defense.

{¶25} Appellant's strategy failed and Appellant was convicted. Appellant filed a timely notice of appeal and submitted five assignments of error:

{¶26} "I. BECAUSE ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION AFFORDS GREATER PROTECTION THAN THE SIXTH AMENDMENT, COOK'S

RIGHT TO CONFRONT HER ACCUSER WAS VIOLATED AT TRIAL BY THE STATE'S INTRODUCTION OF W.K.'S STATEMENTS TO HIS CHILDCARE WORKER."

**{¶27}** "II. COOK'S RIGHT TO CONFRONT HER ACCUSER UNDER THE CONFRONTATION CLAUSE WAS LIKEWISE VIOLATED BY THE STATE'S INTRODUCTION OF W.K.'S STATEMENTS TO HIS CHILDCARE WORKER."

**{¶28}** "III. COOK'S CONVICTIONS SHOULD BE REVERSED BECAUSE COOK WAS DENIED HER RIGHT TO A FAIR TRIAL: THE TRIAL COURT PROHIBITED COOK FROM ASSERTING A VIABLE DEFENSE; THE STATE'S (sic) INTRODUCED SUBSTANTIVE INADMISSIBLE HEARSAY AT TRIAL; AND THE PROSECUTOR ENGAGED IN MISCONDUCT IN CLOSING."

    A. PROHIBITING COOK FROM ASSERTING A CORPORAL PUNISHMENT DEFENSE, AND NOT INSTRUCTING THE JURY ON THE USE OF PARENTAL DISCIPLINE DENIED COOK HER RIGHT TO A FAIR TRIAL.

    B. THE STATE ADMISSION OF SUBSTANTIVE INADMISSABLE HEARSAY- W.K.'S STATEMENTS DENIED COOK HER RIGHT TO A FAIR TRIAL.

    C. THE STATE ENGAGED IN PROSECUTORIAL MISCONDUCT IN CLOSING AGRGUMENTS, WHICH PREJUDICIALLY AFFECTED COOK'S RIGHT TO A FAIR TRIAL.

    D. CUMULATIVE ERROR AT TRIAL DENIED COOK'S RIGHT TO A FAIR ONE.

**{¶29}** "IV. COOK'S CONVICTIONS SHOULD BE REVERSED BECAUSE THE STATE'S EVIDENCE THAT COOK ASSAULTED W.K. OR ENDANGERED HIM, WAS LEGALLY INSUFFICIENT."

**{¶30}** "V. COOK'S CONVICTIONS SHOULD BE REVERSED BECAUSE THE JURY FAILED TO CONSIDER THE DEFENSE OF PARENTAL DISCIPLINE, WHICH MANIFESTLY WEIGHTS (SIC) AGAINST CONVICTING HER."

### STANDARD OF REVIEW

**{¶31}** Appellant's Assignments of Error One through Three address matters that were not brought to the attention of the trial court and thus limit our review to determining whether the trial court committed plain error. We will discuss our standard of review for the first three assignments in this section. Our standard of review for Assignments Four and Five will be addressed within the analysis of those Assignments.

**{¶32}** Pursuant to Crim.R. 52(B), "plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." We apply the doctrine of plain error cautiously and only under exceptional circumstances to prevent a manifest miscarriage of justice. *State v. Rohaley,* 5th Dist. Stark No. 1998CA00092, 1999 WL 4505, *7. In that regard, "[T]he test for plain error is stringent." *State v. Ellison,* 4th Dist. No. 16CA16, 2017-Ohio-284, 81 N.E.3d 853, ¶27. "To prevail under this standard, the defendant must establish that an error occurred, it was obvious, and it affected his or her substantial rights." *State v. Spaulding,* 151 Ohio St.3d 378, 2016-Ohio-8126, 89 N.E.3d 554, ¶ 64. An error affects substantial rights only if it changes the outcome of the trial. *Id.* We notice plain error only to prevent a manifest miscarriage of justice. *State v. Fouts*, 4th Dist. Washington No. 15CA25, 2016-Ohio-1104, 2016 WL

1071457, ¶ 59, quoting *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus. The defendant carries the burden to establish the existence of plain error, unlike the situation in a claim of harmless error, where the burden lies with the state.

## ANALYSIS

{¶33} Appellant's First and Second Assignments of Error as well as subsection B of her Third Assignment of Error focus upon W.K.'s statement to his day care teachers, so we will address those assignments simultaneously.

{¶34} Appellant asserts that the admission of W.K.'s statement violates her rights under the Article I, Section 10, of the Ohio Constitution (First Assignment of Error), the Sixth Amendment/Confrontation Clause of the United States Constitution (Second Assignment of Error), and constitutes impermissible hearsay (Third Assignment of Error, Subsection B). Though Appellant is claiming the trial court was wrong to permit the Appellee to introduce W.K.'s statement at trial, Appellant did not object to its the use, so our review is limited to determining whether the trial court committed plain error.

{¶35} The trial court did conduct a hearing regarding the admission of the statement in response to the Appellant's Motion to Suppress and Appellee's Notice of intent to use the statement.  The trial court concluded that the statement would be permitted, but this ruling, focusing upon Evid. R. 807 is insufficient to preserve the Appellant's purported objection.  The ruling at the June 28, 2107 hearing was at best a preliminary ruling on an evidentiary matter, not unlike the decision of a motion in limine. The purpose of the Evid. R. 807 hearing includes reaching "***an **initial** determination as to the admissibility of the child's statements***" and permitting the state to file an "***

**interlocutory** appeal if the trial court's ruling on the child's availability and/or the admissibility of the child's extrajudicial statements so hinders the state's evidence that the state cannot proceed with its case." *State v. Storch,* 66 Ohio St.3d 280, 293 1993-Ohio-38, 612 N.E.2d 305, syllabus, paragraph 1. The language in *Storch* supports our conclusion that the trial court's ruling was a preliminary evidentiary ruling.

**{¶36}** Evidence Rule 103(A)(1) requires a "timely objection or motion to strike*** stating the specific ground of objection, if the specific ground was not apparent from the context" to preserve the errors alleged by Appellant. During the trial Appellant did not renew her objections to the introduction of the statement of W.K. and thus waived all but plain error. *State v. Diar,* 120 Ohio St.3d 460, 2008-Ohio-6266, 900 N.E.2d 565, ¶ 70. We recognize that the motions at issue were not captioned as motions in limine, but the ultimate goal and therefore, the resultant consequences, are indistinguishable. Appellant was obligated to object to the use of the statement at trial and did not do so, waiving any error except for plain error.

**{¶37}** Appellant has not argued plain error and, after review of the file, we cannot find plain error that would support the First or Second Assignment of Error or the Third Assignment of Error, subsection B. With regard to the First and Second Assignments of Error regarding the Appellant's right of confrontation, the statement at issue is not testimonial and therefor fails to satisfy the requirements established in *Ohio v. Clark.* In *Clark,* the Court found that "a statement cannot fall within the Confrontation Clause unless its primary purpose was testimonial. "Where no such primary purpose exists, the admissibility of a statement is the concern of state and federal rules of evidence, not the Confrontation Clause." *Ohio v. Clark*, 135 S.Ct. 2173, 2180, 192 L.Ed.2d 306 (2015)

quoting *Michigan v. Bryant*, 562 U.S. 344, 359, 131 S.Ct. 1143, 1155, 179 L.Ed.2d 93 (2011).The subject statement in *Clark* was a comment made by a three year old to his pre-school teachers.  The statement in this case is likewise that of a three year old to his pre-school teachers.  In both *Clark* and the case at bar, the teachers noted injuries and were concerned for the safety of the child. *Clark*, *supra* at 2181; Trial Transcript. p. 53, lines 10-14; p. 78, lines 18-22. Also, as in *Clark*, there is no indication that the primary purpose of the conversation was to gather evidence for Appellant's prosecution. The teacher's first objective was to protect the child and they never informed him his answers would be used to arrest or punish the appellant. The child never hinted that he intended his statements to be used by the police or prosecutors and the conversation was informal and spontaneous. The child was asked about his injuries immediately upon discovering them while being cleaned after a bathroom accident. The conversation was quite unlike any formalized stationhouse questioning or police interrogation. *Id.* at 2181.The *Clark* court concludes that statements by very young children rarely, if ever, implicate the confrontation clause because few preschool students understand the details of our criminal justice system. The Supreme Court concluded and we are bound by the finding that "it is extremely unlikely that a 3-year-old child in [W.K.'s] position would intend his statements to be a substitute for trial testimony. On the contrary, a young child in the circumstances would simply want the abuse to end, would want to protect other victims, or would have no discernible purpose at all." *Clark, supra* at 2182.

{¶38} We find no grounds to support a conclusion of any error that resulted in a violation of Appellant's right to confrontation under the United States Constitution and we reach the same conclusion with regard to the Ohio Constitution despite Appellant's

contention that her right to confrontation is heightened by the State of Ohio. In *State v. Stahl*, 111 Ohio St.3d 186, 2006-Ohio-5482, 855 N.E.2d 834, ¶ 36, the court held that the "objective witness" test would be adopted in Ohio. And, in determining whether statement was testimonial for Confrontation Clause purposes, "courts should focus on the expectation of the declarant at the time of making the statement." While described differently, in the context of this case the "objective witness" test is sufficiently similar to the *Clark* "primary purpose" test as both focus upon the intent of the declarant, and, when the declarant is a three year old child questioned about the source of an injury, both tests result in a conclusion that the child's statement is not testimonial. A three year old child is not likely to have the capacity to intend or expect his testimony to be submitted at trial.

**{¶39}** We hold that W.K.'s statement was not testimonial and that Appellant's confrontation rights under the United States Constitution and the Ohio Constitution were not violated by the admission of W.K.'s statement. We find no plain error with regard to the First and Second Assignment of Error and deny the same.

**{¶40}** Appellant's Third Assignment of Error, subsection B, alleges the trial court erred by admitting W.K.'s statement because it was hearsay and not admissible under any exception listed in the Rules of Evidence. Appellant did not object to the admission of the statement, so she has waived all but plain error.

**{¶41}** W.K.'s statement was a simple response to the daycare teacher's question when she noticed the bruising on W.K.'s buttocks. After asking whether she was hurting him while cleaning the bruised area, she asked "how did you get your boo-boos?" and he responded "Ashley did it daddy's house." (Trial Transcript, pp. 45-46). No further questions were posed to W.K. and the medical record of his visit to Nationwide Children's

Hospital shows that he did not respond to questions regarding the source of the bruises. As Appellant did not object to the use of this statement by the Appellee in its opening statement, during the trial or in rebuttal at closing, our review is limited to determining if the trial court committed plain error. Appellant does not provide any argument to support a finding of plain error and upon review of the record we cannot conclude that plain error existed.

{¶42} We cannot conclude that, in the absence of this statement the outcome of the trial would have changed. W.K. was left in the care of Appellant and the record contains sufficient evidence to support a conclusion that he did not have the bruises when he was left with her. The bruises were noticed by W.K.'s father after Appellant had sole access to W.K. and during that time Appellant did spank W.K. and was very frustrated with W.K.'s failure to confess to potty training accidents. Appellant noticed the bruises but did not consider them serious and attempted to blame a collision with the family dog. Emily Sentman, MD, examined W.K. and concluded that the bruises were not consistent with either a fall caused by the family dog or spanking, but could only have been the result of forceful repeating striking with a hard object that had a round surface.

{¶43} Appellee evidently did not find the statement significant as it did not include any reference to the statement in its initial closing comments. Appellant used it in her closing in what can be interpreted as an attempt to undermine the credibility of the state's witnesses who were aware of the statement, but did not immediately contact the authorities or the mother of the child. Appellant cross-examined the father of the child regarding other statements that may have been made by W.K. regarding his bruises presumably in an attempt to lessen the impact of W.K.'s statement to the day care

workers. The record supports a conclusion that appellant had decided to weave the admission of this statement into her defense strategy. Her counsel's cross examination regarding other statements by W.K. can be viewed as a tacit waiver of any objection to the admission of the subject statement. *State v. Miller*, 56 Ohio App.3d 130, 565 N.E.2d 840, (1st Dist.1988), syllabus 1, *State v. Steele*, 5th Dist. Stark No. CA-8541, 1991 WL 270669, *3 (Dec. 9, 1991). Further, the record supports a conclusion that Appellant made a strategic decision to not object to the admission of the statement in the presence of the jury and risk a prejudicial response, and to use the fact that W.K. made no other statement and that there was no concerted effort to obtain another statement to undermine the significance of the single comment. We do not find plain error in this strategic decision. "The Ohio Supreme Court has stated "[w]e will ordinarily refrain from second-guessing strategic decisions counsel make at trial, even where counsel's trial strategy was questionable. *State v. Clayton*, 62 Ohio St.2d 45, 49, 16 O.O.3d 35, 402 N.E.2d 1189 (1980)." *State v. Myers*, 97 Ohio St.3d 335, 362, 780 N.E.2d 186, 217 (2002) as quoted in *State v. Elmore*, 5th Dist. Licking No. 2005-CA-32, 2005-Ohio-5940, ¶ 133. "We will not second-guess the strategic decisions counsel made at trial even though appellate counsel now argue that they would have defended differently." *State v. Post*, 32 Ohio St.3d 380, 388, 513 N.E.2d 754 (1987) as cited in *State v. Mason*, 82 Ohio St.3d 144, 169, 1998-Ohio-370, 694 N.E.2d 932 (1998).

**{¶44}** We cannot conclude that the exclusion of W.K.'s statement would have changed the outcome of the trial or that there was a manifest miscarriage of justice at the trial court and we conclude that appellant's failure to object and exploration of the

statements made or not made by W.K. were part of trial strategy.  We hold that there was no plain error and overrule Section B of the Third Assignment of Error.

III A.

{¶45}  In subsection A of the Third Assignment of Error, Appellant asserts that the trial court erred by prohibiting Cook from asserting a corporal punishment defense, and not instructing the jury on the use of parental discipline. Appellant did not proffer any evidence or argument regarding a corporal punishment defense, nor did Appellant comply with Crim.R. 30 regarding jury instructions, so this court is limited to reviewing the record for plain error.

{¶46}  The trial court and counsel discussed the issue of parental discipline and jury instructions beginning on page five of the transcript, but it is difficult to discern Appellant's position from trial counsel's comments.  Prior to voir dire Appellant's trial counsel states: "I hadn't really looked into an instruction on corporal punishment. I wanted to see kind of how the evidence played out and if it was appropriate ***." The trial court responds "We will consider that when it comes time." (Trial Transcript, p.5, lines 7-18). The issue is revisited on page seven of the transcript when Appellee objects to allowing it at trial because Appellant is not a parent.  Appellant's counsel disagrees and contends that the defense is available to anyone action in loco parentis, but then notes "it's not going to be a centerpiece of our defense that there was corporal punishment used and that it's totally legal. I don't want it to become a centerpiece of the prosecution that she's not allowed to do it. If she was acting in loco parentis and I think that in this case she was, I think she would have the same defenses. So if I'm wrong about case law, I'm happy to review it. It might make this a moot point." (Trial Transcript, p.7, line 24; p. 8, lines 1-7).

Appellee again contends that only a parent has the right to administer discipline and the trial court rules "that corporal punishment shall be excluded. She does not have the ability to assert it and we'll proceed on that basis." (Trial Transcript, p.9, lines 5-7).

**{¶47}** The trial court's ruling on this issue was akin to a motion in limine as it was a preliminary ruling and the final.   Appellant did not attempt to assert this defense throughout the trial, nor did she proffer any evidence on the matter and therefor she has waived all be plain error.

**{¶48}** Parental discipline is an affirmative defense to a charge of child endangering. See, *State v. Snell,* 5th Dist. Stark Nos.2002CA00181, 2002CA00190, 2003–Ohio–975, ¶ 30 as quoted in *State v. Phillips*, 5th Dist. Holmes No. 14-CA-003, 2014-Ohio-5322, ¶ 18, but this same opinion makes clear in several citations that the law does not interfere with the **parent's** right to administer corporal punishment. The law prohibits extreme or excessive discipline as a means to balance the competing interest of the "the **parents'** fundamental, inalienable right to raise and control their children and the state's legitimate interest in the protection and safety of children and in the reporting of child abuse." *Phillips, supra* at ¶ 19.  (Emphasis added.) We cannot find plain error in the trial court's initial ruling that Appellant was not entitled to the defense and the fact that Appellant did not attempt to offer the defense at trial or proffer evidence or argument limits our analysis to this conclusion.

**{¶49}** We note that Appellant was able to present evidence that she was caring for W.K., that she was participating in his training and, within the transcript from the concurrent custody hearing, that W.K.'s mother consented to her spanking W.K. (Exhibit 8, p. 332). Without a proffer by Appellant it is difficult to imagine what additional evidence

could be introduced had the trial court permitted the assertion of the defense of parental discipline.

**{¶50}** As to the alleged failure to include a jury instruction regarding parental discipline, we likewise find no plain error. Appellant did not submit a proposed jury instruction nor did he object to the instructions given to the jury before the jury retired to consider its verdict, "stating specifically the matter objected to and the grounds of the objection." Crim. R. 30(A). Because we find that the trial court did not commit plain error by not permitting the affirmative defense of parental discipline, we can only conclude that there is no plain error when the court does not include a jury instruction on that same issue, particularly when Appellant did not offer such an instruction.

## III C.

**{¶51}** In Subsection C of the Third Assignment of Error, Appellant contends the State engaged in prosecutorial misconduct in closing arguments, which prejudicially affected Cook's right to a fair trial. Appellant did not object to these comments at trial, thus waiving all but plain error. *State v. White*, 82 Ohio St.3d 16, 22, 1998–Ohio–363, 693 N.E.2d 772, quoting *State v. Slagle,* 65 Ohio St.3d 597, 604, 605 N.E.2d 916 (1992). We therefore review Appellant's allegations under the plain-error standard.

**{¶52}** The test for prosecutorial misconduct is whether the prosecutor's remarks and comments were improper and if so, whether those remarks and comments prejudicially affected the substantial rights of the accused. *State v. Lott*, 51 Ohio St.3d 160, 555 N.E.2d 293 (1990), cert. denied, 498 U.S. 1017, 111 S.Ct. 591, 112 L.Ed.2d 596 (1990). In reviewing allegations of prosecutorial misconduct, we must review the

complained-of conduct in the context of the entire trial. *Darden v. Wainwright*, 477 U.S. 168, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986).

{¶53} Appellant relies upon the case of *State v. Smith*, 14 Ohio St.3d 13, 14, 470 N.E.2d 883, 885 (1984), but the behavior in that case was very different. In the case at bar Appellant refers to isolated comments of the prosecutor allegedly expressing his opinion or asking the jury to stand in the place of the victim. These comments bear little resemblance to the comments in *Smith*, where "the assistant prosecutor referred to defense evidence as "lies," "garbage," "garbage lies," "[a] smoke screen," and "a well conceived and well rehearsed lie" and "intimated that defense counsel had suborned perjury by manufacturing, conceiving and fashioning lies to be presented in court" where "there was no evidence to substantiate these accusations." *Smith, supra* at 14. While the comments of the prosecutor in the case at bar may have raised objection, we cannot conclude that they were so outside the latitude generally granted the prosecution such that they comprise plain error. Further, Appellant's trial counsel's decision to not object to these comments and thus bring more attention to them can be viewed as a reasonable trial strategy, which cannot serve as the basis for error.

{¶54} For those reasons, we find no plain error and overrule subsection C of the Third Assignment of Error.

### III D.

{¶55} In Subsection D of the Third Assignment of Error, Appellant contends that cumulative error at trial denied Cook's right to a fair trial contending that evidence of guilt was not overwhelming and substantial rights were repeatedly violated.

**{¶56}** In *State v. Brown*, 100 Ohio St.3d 51, 2003–Ohio–5059, 796 N.E.2d 506, the Supreme Court of Ohio addressed the doctrine of cumulative error. However, as explained in *State v. Bethel*, 110 Ohio St.3d 416, 2006–Ohio–4853, 854 N.E.2d 150, ¶ 197, it is simply not enough to intone the phrase "cumulative error." *State v. Sapp*, 105 Ohio St.3d 104, 2004–Ohio–7008, 822 N.E.2d 1239, ¶ 103. In *State v. DeMarco*, 31 Ohio St.3d 191, 196, 509 N.E.2d 1256, 1261 (1987) the court found that "[s]ignificant parts of the testimony of these witnesses involved technical violations of the hearsay rule *** and that "the cumulative effect of these witnesses' hearsay testimony was prejudicial. Although violations of the Rules of Evidence during trial, singularly, may not rise to the level of prejudicial error, a conviction will be reversed where the cumulative effect of the errors deprives a defendant of the constitutional right to a fair trial."  In the case before us, we have not found violations of the Rules of Evidence or other error.

**{¶57}** Where we have found that the trial court did not err, cumulative error is simply inapplicable. *State v. Carter*, 5th Dist. Stark No. 2002CA00125, 2003–Ohio–1313, ¶ 37. To the extent that we have found that any claimed error did not rise to the level of plain error, we conclude that the cumulative effect of such claimed errors is harmless because taken together, they did not materially affect the verdict. *State v. Leonard*, 104 Ohio St.3d 54, 89–90, 2004–Ohio–6235, 818 N.E.2d 229, 270 at ¶ 185 as quoted in *State v. Bragg*, 5th Dist. Licking No. 16-CA-95, 2017-Ohio-5726, ¶¶ 37-39, appeal not allowed, 151 Ohio St.3d 1457, 2017-Ohio-8842, 87 N.E.3d 223, ¶¶ 37-39 (2017).

**{¶58}** Subsection D of Appellant's Third Assignment of Error is overruled.

IV / V.

{¶59} Appellant's Fourth and Fifth Assignments of Error claim that the evidence was insufficient and against the manifest weight of the evidence. Appellants' argument regarding manifest weight is uniquely tied to the alleged failure of the jury to consider the defense of parental discipline.

{¶60} The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different. *State v. Thompkins*, 78 Ohio St.3d 380, 1997–Ohio–52, 678 N.E.2d 541, paragraph two of the syllabus. The standard of review for a challenge to the sufficiency of the evidence is set forth in *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991) at paragraph two of the syllabus, in which the Ohio Supreme Court held as follows:

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

{¶61} In determining whether a conviction is against the manifest weight of the evidence, the court of appeals functions as the "thirteenth juror," and after "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must

be overturned and a new trial ordered." *Thompkins, supra*, at 387. Reversing a conviction as being against the manifest weight of the evidence and ordering a new trial should be reserved for only the "exceptional case in which the evidence weighs heavily against the conviction." *Id.*

**{¶62}** We note the weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. DeHass,* 10 Ohio St.2d 230, 237 N.E.2d 212 (1967). The trier of fact "has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page." *Davis v. Flickinger,* 77 Ohio St.3d 415, 418, 1997–Ohio–260, 674 N.E.2d 1159.

**{¶63}** Appellant was convicted of two counts of Child Endangering (R.C. 2919.22(A) and 2919.22(B)(1)) and one count of Assault (R.C. 2903.13(A)). The relevant code sections require the following proof:

(A)  No person, who is the parent, guardian, custodian, person having custody or control, or person in loco parentis of a child under eighteen years of age or a mentally or physically handicapped child under twenty-one years of age, shall create a substantial risk to the health or safety of the child, by violating a duty of care, protection, or support. It is not a violation of a duty of care, protection, or support under this division when the parent, guardian, custodian, or person having custody or control of a child treats the physical or mental illness or defect of the child by spiritual means through prayer alone, in accordance with the tenets of a recognized religious body.

(B) No person shall do any of the following to a child under eighteen years of age or a mentally or physically handicapped child under twenty-one years of age:

1.  Abuse the child;

***

R.C. 2919.22.

(A) No person shall knowingly cause or attempt to cause physical harm to another or to another's unborn.

R.C. 2903.13.

**{¶64}** The testimony in this case regarding the appearance of dark bruises on W.K.'s buttocks is uncontroverted regarding their initial appearance.  W.K.'s father testified that the child did not have any marks when he left the child with Appellant on Tuesday and that he first noticed the bruises Tuesday evening during a bath. If believed, the jury could conclude that the harm occurred while the child was in the Appellant's custody.

**{¶65}**  Appellant and Appellee presented conflicting evidence regarding the cause of the bruises.  Appellant did not deny spanking M.K., but insisted W.K. was bruised when the family dog knocked him down in a gravel driveway. Appellee responded by presenting the testimony of Emily Sentman, M.D. the emergency room doctor responsible for W.K.'s care.  Dr. Sentman concluded the bruises were the result of repeated forceful blows by a

hard object with a rounded surface and unrelated to spanking. Dr. Sentman rejected appellant's contention that the bruises were the result of fall, and compared the force necessary to cause the injuries to the same force that would cause "seat belt" bruises in an automobile accident. If believed, this evidence would support a conclusion that W.K. was abused because he exhibited evidence of physical injury, inflicted other than by accidental means, or which was at variance with the history given of it R.C. 2151.031(C), and that he had been assaulted as he suffered physical harm. R.C. 2901.01 (A)(3). This evidence, combined with the evidence placing the uninjured W.K. in the care and control of Appellant and the discovery of the injuries immediately thereafter, as well as the Appellant's description of her frustration with W.K.'s behavior provide sufficient basis for the jury to find, beyond a reasonable doubt, that the Appellant committed the offenses charged.

{¶66} Further, after review of the entire record, weighing the evidence and all reasonable inferences, we cannot conclude the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered. Appellant's assertion that the jury should have acquitted Appellant because her act of spanking W.K. was protected parental discipline is purely speculative. The physician's testimony and the photographs of the bruises could just as easily be viewed as evidence of excessive discipline. We hold this is not an "exceptional case in which the evidence weighs heavily against the conviction."

**{¶67}** Appellants Fourth and Fifth Assignments of Error are overruled and the decision of the Fairfield County Municipal Court is affirmed.

By: Baldwin, J.

Delaney, P.J. and

Wise, Earle, J. concur.