[Cite as *State v. Hinton*, 2014-Ohio-490.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No. 99581

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## THOMAS HINTON

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-561213

**BEFORE:** Keough, P.J., McCormack, J., and E.T. Gallagher, J.

**RELEASED AND JOURNALIZED:** February 13, 2014

**ATTORNEY FOR APPELLANT**

Edward M. Heindel
450 Standard Building
1370 Ontario Street
Cleveland, Ohio 44113

**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
By: Ronni Ducoff
        Adam M. Chaloupka
        Erin Stone
Assistant Prosecuting Attorneys
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

KATHLEEN ANN KEOUGH, P.J.:

**{¶1}** Defendant-appellant, Thomas Hinton ("Hinton"), appeals his conviction for attempted gross sexual imposition. For the reasons that follow, we affirm.

**{¶2}** In April 2012, Hinton was indicted for attempted rape with a furthermore clause that the victim was under the age of ten (Count 1), gross sexual imposition (Count 2), and kidnapping with a sexual motivation specification (Count 3).

**{¶3}** In January 2013, the state dismissed Count 1, and moved to amend Count 2 to incorporate the attempt statute, thereby amending the charge to attempted gross sexual imposition. The trial court granted the state's motion and the case proceeded to trial, where the jury heard the following evidence.

**{¶4}** On February 24, 2012, the victim, T.S., her brother, and her teenage uncle, E.W., were dropped off by her parents at her aunt Aqueelah Goins and Hinton's house because E.W. was going to babysit them and Aqueelah's son while T.S.'s parents and Aqueelah went out for the evening.

**{¶5}** While the adults were out, the children played at the house and watched movies in Aqueelah's bedroom. When Aqueelah returned home, she was in an intoxicated state. Because the children were on her bed, Aqueelah decided to sleep on the small couch in the living room, leaving the larger couch in the living room for Hinton to sleep on when he returned home.

**{¶6}** After Aqueelah fell asleep, T.S. and her brother came out into the living room to play. The children eventually grew tired and fell asleep on the larger couch. T.S.

testified that she laid on her side facing the back of the couch with her brother lying next to her — back-to-back. At some point and unbeknownst to T.S., her brother left the living room and returned to Aqueelah's bedroom to sleep with the other children.

{¶7} According to T.S., she woke up because she was starting to get cold and then she felt a hand near her stomach. Thinking it was her little brother, she smacked the hand away. She then felt a hand unbuttoning her pants and trying to pull down the zipper to her pants. Again, she smacked the hand away. She then felt a hand playing with her underwear. According to T.S., it felt like "someone was trying to pull my underwear, like out of my pants" — "pulling it up trying to lift it up — like a wedgy [sic] but lifting it up." Again, she smacked the hand away. She testified that she started rubbing her eyes, turned over, and saw Hinton. She stated she knew it was him because she saw "dreadlocks" and Hinton was the only person she knew with deadlocks. She then turned to face the couch wondering what was going on.

{¶8} T.S. testified that she then felt the hand trying to go into her pants between her underwear and pants. She stated that the hand was near her private parts, the front of her private part near her waist. She clarified that the hand was between her pants and the elastic band of her underwear by her belly button. She demonstrated the touching to the jury, and the record reflected that her right hand was into the waistband of her pants facing in a downward direction. This time, she smacked the hand away, climbed over Hinton's legs, and went to the bathroom.

{¶9} After zipping up her pants in the bathroom, she went into the bedroom to wake up E.W. After several attempts, E.W. finally woke up. T.S. told E.W. that Hinton had "touched her inappropriately" and she wanted to call her dad to pick her up. After five unanswered phone calls, T.S.'s dad answered his phone, and T.S. told him what occurred on the couch.

{¶10} The testimony differed as to who woke Aqueelah, but ultimately Aqueelah was awakened and T.S. told her what happened. Aqueelah then woke up Hinton, who was asleep on the larger couch. Aqueelah testified that she yelled at Hinton to get up, told him to get out of the house, and threw his clothes at him. According to Aqueelah, Hinton wondered what was going on. As Hinton was going into the bedroom or bathroom, T.S.'s father, mother, and her two uncles came into the house, and there was a physical altercation between T.S.'s father and Hinton. The altercation ended when someone threatened to call the police.

{¶11} The jury found Hinton guilty of amended Count 2, attempted gross sexual imposition, and further found that the victim was under the age of 13 at the time of the offense; but not guilty of Count 3. The trial court sentenced Hinton to 16 months in prison and classified him as a Tier II sex offender.

{¶12} Hinton now appeals his conviction, raising five assignments of error, which will be addressed together and out of order where appropriate.

I. Sufficiency and Manifest Weight of the Evidence

**{¶13}** In his first assignment of error, Hinton contends that his conviction for attempted gross sexual imposition is not supported by sufficient evidence and against the manifest weight of the evidence. Specifically, he contends that the evidence was insufficient that he took a substantial step towards making any "sexual contact" with T.S. because there was no evidence that he touched or attempted to touch any of the areas defined under R.C. 2907.01(B).

**{¶14}** The test for sufficiency requires a determination of whether the prosecution met its burden of production at trial. *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 12. An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 1997-Ohio-52, 678 N.E.2d 541.

**{¶15}** Hinton was convicted of attempted gross sexual imposition in violation of R.C. 2923.02 and R.C. 2907.05(A)(4). R.C. 2923.02(A) provides, in part, as follows: "No person, purposely or knowingly * * * shall engage in conduct that, if successful, would constitute or result in the offense."

**{¶16}** R.C. 2907.05(A)(4) defines gross sexual imposition in relevant part as, "no person shall have sexual contact with another, not the spouse of the offender * * * when *

* * (4) the other person * * * is less than thirteen years of age, whether or not the offender knows the age of that person."

{¶17} "Sexual contact" is defined as "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B).

{¶18} For Hinton to be convicted of attempted gross sexual imposition, the state had to prove that Hinton intended to engage in sexual contact with a person less than thirteen years of age and that he committed an act that "convincingly demonstrates" such intent. *State v. Woods*, 48 Ohio St.2d 127, 132, 357 N.E.2d 1059 (1976), *overruled in part, State v. Downs*, 51 Ohio St.2d 47, 364 N.E.2d 1140 (1977).

> To constitute a "substantial step," the conduct must be "strongly corroborative of the actor's criminal purpose." The application of this standard will of course depend upon both the nature of the intended crime and the facts of the particular case. A substantial step in the commission of a robbery may be quite different from that in arson, rape, or some other crime. But this standard does properly direct attention to overt acts of the defendant which convincingly demonstrate a firm purpose to commit a crime * * *.

*Woods*.

{¶19} In this case, T.S. testified that she was sleeping on the couch when she felt a hand near her stomach. Thinking it was her little brother, she smacked the hand away. Then she felt a hand unbuttoning her pants and trying to pull down the zipper to her pants. Again, she smacked the hand away. She then felt another hand playing with her underwear. According to T.S., it felt like "someone was trying to pull my underwear,

like out of my pants" — "pulling it up trying to lift it up — like a wedgy [sic] but lifting it up." T.S. testified that she again smacked the hand away. T.S. then testified that she felt the hand trying to go into her pants between her underwear and pants. She stated that the hand was near her private parts, the front of her private part near her waist. She clarified that the hand was between her pants and the elastic band of her underwear by her belly button. She demonstrated the touching to the jury, and the record reflected that her right hand was into the waistband of her pants facing in a downward direction. This time, she smacked the hand away, climbed over the legs of the perpetrator, and went to the bathroom.

{¶20} T.S. testified that Hinton was the person who touched her "inappropriately." She stated that she recognized it was Hinton because she saw "dreadlocks" and Hinton was the only person she knew with dreadlocks. T.S. testified that although Hinton had pillows covering his body, she could clearly see it was him.

{¶21} The jury could have readily inferred that the repeated acts of Hinton placing his hand on T.S.'s body, with each act progressing further towards touching an erogenous zone, were a substantial step toward attempting to have sexual contact with T.S. Accordingly, viewing the evidence in the light most favorable to the prosecution, there was sufficient evidence presented to find the elements of attempted gross sexual imposition proven beyond a reasonable doubt.

{¶22} "'A manifest weight challenge, on the other hand, questions whether the prosecution met its burden of persuasion.'" *State v. Ponce*, 8th Dist. Cuyahoga No.

91329, 2010-Ohio-1741, ¶ 17, quoting *State v. Thomas*, 70 Ohio St.2d 79, 80, 434 N.E.2d 1356 (1982). The manifest-weight-of-the-evidence standard of review requires us to review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Otten*, 33 Ohio App.3d 339, 515 N.E.2d 1009 (9th Dist.1986), paragraph one of the syllabus. The discretionary power to grant a new trial should be exercised only in exceptional cases where the evidence weighs heavily against the conviction. *Thompkins*, 78 Ohio St.3d at 386, 1997-Ohio-52, 678 N.E.2d 541.

{¶23} Based on the record before us, we cannot say that this is the exceptional case where the jury clearly lost its way in finding Hinton guilty of attempted gross sexual imposition. While the witnesses' testimonies contained some inconsistencies, T.S. consistently testified that she felt Hinton touching her inappropriately at least four times — first, touching her stomach; second, unbuttoning her pants and trying to unzip her pants; third, pulling her underwear to the point that it was sticking out of her pants; and the fourth time, placing his hand in a downward direction between her pants and the elastic band of her underwear. The jury's verdict demonstrates that it considered all the evidence, weighed the testimony of all the witnesses, and discounted and accepted testimony where the jury determined it was appropriate.

{¶24} Accordingly, Hinton's assignment of error is overruled.

## II.   Involuntary Acts

**{¶25}** In this second and fifth assignments of error, Hinton challenges the trial court's decisions that affected his defense that he was sleeping when the incident occurred.   According to Hinton, the fact that he was sleeping would make any touching an involuntary, reflexive action; thus, negating the mens rea necessary to convict him of the crime.

**{¶26}** "[A] defendant cannot be found guilty of an offense unless it is shown, inter alia, that his liability is predicated upon conduct which constitutes a voluntary act, and that he had the requisite mental state in committing the act." *State v Mobley*, 5th Dist. Richland No. 2010-CA-0018, 2011-Ohio-309, ¶ 40, citing R.C. 2901.21(A).   "Reflexes, convulsions, body movements during unconsciousness or sleep, and body movements that are not otherwise a product of the actor's volition, are involuntary acts."   R.C. 2901.21(D)(2).

**{¶27}** Ohio courts have generally concluded that a defendant's claim that his actions were involuntary because he was asleep or unconscious is in the nature of an affirmative defense.   *Mobley* at ¶ 43, citing *State v. LaFreniere*, 85 Ohio App.3d 840, 849, 621 N.E.2d 812 (11th Dist.1993).   Affirmative defenses include those defenses that are "peculiarly within the knowledge of the accused."   R.C. 2901.05(B)(1)(b).   The defendant bears the burden of proving an affirmative defense by a preponderance of the evidence.   R.C. 2901.01(A).

**{¶28}** In his second assignment of error, Hinton contends that the trial court erred when it prohibited counsel from arguing during closing argument that Hinton was sleeping at the time of the incident because there was evidence at trial that supported that conclusion.

**{¶29}** "The purpose of closing argument is to summarize the evidence at trial." *State v. Thompson*, 2d Dist. Montgomery No. 23581, 2010-Ohio-4535,¶ 46, quoting *John F. Bushelman Constr., Inc. v. Glacid Group, Inc.*, 1st Dist. Hamilton Nos. C-950412, C-950438, 1996 Ohio App.LEXIS 2624 (June 16, 1996). Prosecutors and defense counsel are afforded a wide degree of latitude during closing arguments to address what the evidence has shown and what reasonable inferences may be drawn from that evidence. *Id.*, citing *State v. Black*, 181 Ohio App.3d 821, 2009-Ohio-1629, 911 N.E.2d 309, ¶ 33 (2d Dist.), citing *State v. Lott*, 51 Ohio St.3d 160, 165, 555 N.E.2d 293 (1990). However, a trial judge retains discretion to limit the duration and scope of closing arguments. *Herring v. New York,* 422 U.S. 853, 858, 95 S.Ct. 2550, 45 L.Ed.2d 593 (1975); *Pang v. Minch*, 53 Ohio St.3d 186, 194, 559 N.E.2d 1313 (1990). Thus, a trial judge's limitation on closing arguments will not be reversed absent an abuse of discretion. *Pang* at 194.

**{¶30}** In this case, Aqueelah testified that after speaking with T.S., she "woke [Hinton] up" while he was on the larger couch. During cross-examination, she admitted that she yelled at Hinton to wake up. E.W. also testified that while the phone calls were going on, Hinton was "[a]sleep on the couch." When questioned whether he was "still

sleeping," E.W. responded "yes." Accordingly, while the testimony established that Hinton was asleep after the incident, there was no testimony or evidence that he was sleeping at time of the incident. The testimony of E.W. and Aqueelah demonstrate that he was asleep when Aqueelah confronted him after the incident and after learning what had happened.

{¶31} Because there was no evidence that Hinton was asleep during the incident, the trial court properly prohibited defense counsel from arguing during closing that Hinton was sleeping during the incident and his movements were a result of reflexes or were involuntary. However, the record demonstrates that defense counsel argued during closing that Hinton was sleeping after the alleged incident; likewise, the state admitted during its final closing argument that Hinton had to be awakened by Aqueelah after the incident. Accordingly, the trial court did not abuse its discretion in prohibiting defense counsel from arguing that Hinton was asleep during the alleged incident.

{¶32} In his fifth assignment of error, Hinton contends that the trial court erred when it refused to provide the jury with an instruction that Hinton must have engaged in a voluntary act, and that sleeping may be a defense to the action.

{¶33} A determination as to which jury instructions are proper is a matter left to the sound discretion of the trial court. *State v. Guster*, 66 Ohio St.2d 266, 271, 421 N.E.2d 157 (1981). We review the trial court's refusal to give the requested jury instructions under an abuse of discretion standard. *State v. Wolons*, 44 Ohio St.3d 64, 68, 541 N.E.2d 443 (1989). An abuse of discretion implies that the trial court's attitude

was unreasonable, arbitrary or unconscionable. *State v. LaMar*, 95 Ohio St.3d 181, 2002-Ohio-2128, 767 N.E.2d 166, ¶ 40.

{¶34} Crim.R. 30(A) requires a trial court to "fully and completely give the jury all instructions [that] are relevant and necessary for the jury to weigh the evidence and discharge its duty as the fact-finder." *State v. Comen*, 50 Ohio St.3d 206, 553 N.E.2d 640 (1990), paragraph two of the syllabus. In determining whether the presence of sufficient evidence exists in the record to support the giving of a proposed jury instruction, an appellate court should determine whether the record contains evidence from which reasonable minds might reach the conclusion sought by the instruction. *State v. Risner*, 120 Ohio App.3d 571, 574, 698 N.E.2d 511 (3d Dist.1997). However, a trial court does not err in failing to instruct the jury on an affirmative defense where the evidence is insufficient to support the instruction. *State v. Melchior*, 56 Ohio St.2d 15, 21-22, 381 N.E.2d 195 (1978).

{¶35} Ordinarily, requested instructions should be given if they are correct statements of the law applicable to the facts in the case. *Murphy v. Carrollton Mfg. Co.*, 61 Ohio St.3d 585, 591, 575 N.E.2d 828 (1991). To show reversible error, the proponent of the instruction must show both that the trial court's refusal to give the instruction was an abuse of discretion and that he was prejudiced by the court's refusal to give the proposed instruction. *Id.*

{¶36} As previously discussed, because sleep is an affirmative defense, a defendant asserting the sleep defense must adduce evidence supporting his theory that the

actions he is accused of were involuntary acts because he was sleeping. Hinton argues that an involuntary act instruction was appropriate because Aqueelah testified that he was asleep. As explained above, there was no evidence that Hinton was asleep during the incident. Because sleep is an affirmative offense, the trial judge is not required to give an instruction of involuntary acts to the jury where the defendant has not provided evidence that he was asleep during the incident.

{¶37} Moreover, the record demonstrates that the trial court granted Hinton wide latitude in presenting this defense by allowing him to reopen his case for evidence of the affirmative defense of being asleep, specifically, for Hinton to testify that he was asleep during the alleged incident. Hinton declined to testify and no other evidence was presented to support the affirmative defense.

{¶38} Accordingly, after a full review of the record, we find the trial judge did not abuse her discretion by not giving an instruction on involuntary acts.

{¶39} Hinton's second and fifth assignments of error are overruled.

### III. Cross-Examination — Prior Inconsistent Statements

{¶40} Hinton contends in his third assignment of error, that the trial court erred in prohibiting him from cross-examining E.W. regarding prior inconsistent statements.

{¶41} "Cross-examination of a witness is a matter of right, but the 'extent of cross-examination with respect to an appropriate subject of inquiry is within the sound discretion of the trial court.'" *State v. Green*, 66 Ohio St.3d 141, 147, 1993-Ohio-26, 609 N.E.2d 1253, quoting *Alford v. United States* , 282 U.S. 687, 691, 51 S.Ct. 218, 75

L.Ed. 624 (1931). The right of cross-examination includes the right to impeach a witness's credibility. *Id*.

{¶42} Hinton contends that under Evid.R. 613(B), he was entitled to present extrinsic evidence to impeach E.W. on his prior inconsistent statement. Under Evid.R. 613(B), which governs impeachment by self-contradiction, extrinsic evidence is not admissible unless a proper foundation is laid for its admission. To establish a proper foundation: (1) the witness must be asked whether he or she made the prior inconsistent statement: (2) the witness is given an opportunity to admit, deny, or explain the statement; and (3) the opposing party is given an opportunity to interrogate the witness regarding the inconsistent statement. Evid.R. 613(B)(1); *State v. Martinez*, 8th Dist. Cuyahoga No. 97233, 2013-Ohio-1025, ¶ 15, citing *State v. Morgan*, 8th Dist. Cuyahoga No. 97934, 2012-Ohio-4937, ¶ 14-15. If a witness denies making the statement, extrinsic evidence of the statement is generally admissible if it relates to "a fact of consequence to the determination of the action." Evid.R. 613(B)(2)(a), *Martinez* at ¶ 15.

{¶43} During the course of trial, E.W. testified about where he attended school. It was discovered that E.W. told Detective Thompson during an interview that he was not in school because he lacked the proper documentation to register for school. However, E.W. told the social worker that he had been suspended from school for smoking. The trial court initially ruled that this inconsistency was relevant to E.W.'s credibility. At the state's request, the trial court conducted a voir dire hearing on this issue because the state asserted that the inconsistency was not necessarily contradictory.

**{¶44}** During the voir dire hearing, E.W. testified that he had been suspended from school for smoking marijuana. He further explained that after his suspension was over, a lack of proper documentation still kept him out of school. E.W. explained he was not in school when he was interviewed by the social worker because his then-guardian had refused to provide the proper documentation to re-enroll him. E.W. never told the detective about his suspension or expulsion for smoking, nor did he tell the detective about his guardian's actions.

**{¶45}** After the voir dire hearing, the trial court ruled that the jury could hear about a suspension for smoking, but not that the substance involved was marijuana. The court also allowed the jury to hear that E.W. gave the detective and the social worker different reasons why he was not enrolled in school.

**{¶46}** From our review, the record shows that defense counsel was not prohibited from questioning E.W. on the statements he made to the detective and social worker. The only limitation the trial court placed on defense counsel was that she could not question E.W. regarding the substance he smoked.

**{¶47}** Accordingly, the trial court did not abuse its discretion in limiting defense counsel's cross-examination of E.W. Moreover, we find that defense counsel was not limited in cross-examining E.W. about the differing stories he told to the detective and the social worker. Moreover, assuming without deciding that the proper foundation was made under Evid.R. 613(B), E.W.'s statement did not relate to the ultimate fact in

question, i.e., whether Hinton attempted to have sexual contact with T.S. Therefore, this evidence was inadmissible under Evid.R. 613(B) for impeachment purposes.

{¶48} Hinton's third assignment of error is overruled.

## IV.   Ineffective Assistance of Counsel

{¶49} In his fourth assignment of error, Hinton contends that he was denied effective assistance of counsel because his trial counsel (1) failed to impeach T.S. with prior inconsistent statements she made to Detective Thompson, and (2) failed to file a written request for jury instructions on the issue of sleep as a defense.

{¶50} To establish ineffective assistance of counsel, a defendant must demonstrate that counsel's performance fell below an objective standard of reasonable representation and that he was prejudiced by that performance.   *State v. Drummond*, 111 Ohio St.3d 14, 2006-Ohio-5084, 854 N.E.2d 1038, ¶ 205, citing *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. (1984).   Prejudice is established when the defendant demonstrates "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."   *Strickland* at 694.

{¶51} Hinton first contends that he was denied effective assistance of counsel because his trial counsel failed to impeach T.S. with statements she made to Detective Thompson, which were allegedly different than her trial testimony.

{¶52} We note that no proffer was made with the trial court regarding what statements T.S. made to Detective Thompson that were inconsistent with her trial

testimony. Further, a review of the record demonstrates that during T.S.'s testimony, defense counsel did not ask T.S. about her statement to Detective Thompson. During Detective Thompson's testimony, however, defense counsel attempted to question the detective about statement T.S. made to him, in an attempt to impeach T.S's testimony. Specifically, defense counsel questioned Detective Thompson about specific time frames of when events occurred. The trial court prohibited this questioning because counsel did not first question T.S. about these inconsistencies.

{¶53} While defense counsel failed to question T.S. about her statement to the detective and any inconsistencies that existed, it is apparent that defense counsel was attempting to impeach T.S. about when events occurred, i.e., when she arrived at her aunt's house and when Hinton came home. Assuming her statement about specific time frames was inconsistent with her trial testimony, nothing in the record suggests any inconsistency in her testimony about Hinton's actions in touching her. Hinton fails to identify any other inconsistencies that defense counsel failed to explore and how these inconsistences would have prejudiced Hinton such that the outcome of trial would have been different. Accordingly, this court cannot say that counsel's deficiency in failing to question T.S. about her statement to Detective Thompson about specific time references was prejudicial.

{¶54} Hinton also contends that counsel was ineffective for failing to file a request for jury instructions on the issue of sleep as an affirmative defense. The record demonstrates that defense counsel orally requested an instruction on sleep as an

involuntary act. Further, the record shows that the trial court denied the involuntary act instruction because the evidence was insufficient to warrant such an instruction, and not because counsel did not file the requested instruction with the clerk of courts. Accordingly, Hinton's ineffective assistance of counsel claim has no merit.

{¶55} Based on the record before this court, we cannot say that Hinton was denied the effective assistance of counsel to the extent that he was prejudiced and the result of the trial would have been different. Hinton's fourth assignment of error is overruled.

{¶56} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

KATHLEEN ANN KEOUGH, PRESIDING JUDGE

TIM McCORMACK, J., and
EILEEN T. GALLAGHER, J., CONCUR