[Cite as *State v. Perez*, 2020-Ohio-100.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

    Plaintiff-Appellee,            :

                                  No. 108245

    v.                             :

JEZEEL ACOSTA PEREZ,                    :

    Defendant-Appellant.           :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** January 16, 2020

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-18-632418-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Gregory Paul, Assistant Prosecuting Attorney, *for appellee.*

Michael E. Stepanik, *for appellant.*

ANITA LASTER MAYS, J.:

{¶ 1} Defendant-appellant Jezeel Acosta Perez ("Perez") appeals his convictions and asks this court to reverse his convictions and remand for a new trial. We affirm.

{¶ 2} Perez was convicted of domestic violence, a fourth-degree felony, in violation of R.C. 2919.25; and endangering children, a fourth-degree felony, in violation of R.C. 2919.22(A). Perez was sentenced to 120 days in jail and placed on two years of community control.

## I.    Facts and Procedural History

{¶ 3} On the morning of August 25, 2018, Perez and his 16-year-old step-son, V.S., went to the barbershop and Walmart. Upon returning home, V.S. noticed that his little brothers had opened a box of Legos that Perez had previously told the children not to touch. V.S. stated that the Legos were kept in his 11-year-old sister's, J.G., top dresser drawer. Once Perez saw the children playing with the Legos, V.S. stated that Perez grabbed J.G., placed her on the couch, and began hitting her on her back multiple times with a closed fist.

{¶ 4} V.S. stated that J.G. was screaming and crying until their mother Jesica, Perez's wife, ran into the living room. According to V.S., Jesica told Perez to let J.G. go, but when he did not, Jesica punched Perez in the eye. Jesica grabbed J.G. and took her into the master bedroom and attempted to shut the door, but Perez went after them. As Perez attempted to grab Jesica, V.S. got in between Perez and Jesica, which allowed Jesica and J.G. to run to the bathroom. According to V.S., Perez followed them into the bathroom and grabbed J.G. by the neck from the back. V.S. testified that Jesica pushed Perez away and Perez almost pushed Jesica into the bathtub. V.S. then tried to separate Perez and Jesica, but Perez pushed him away.

Jesica then tried to run into V.S.'s room, but Perez grabbed Jesica by her neck, pulled her down to the ground, and began hitting her.

{¶ 5} V.S. grabbed Perez and placed him in a choke hold so that Jesica and J.G. could escape out of the house. Jesica and J.G. ran downstairs to the neighbor's residence, while V.S. held Perez. Once V.S. let Perez go, V.S. testified that Perez ran after Jesica. After a discussion between Jesica and Perez, Perez left the home. Later on that evening, Perez, according to V.S., told Jesica that she must either "choose your son or you choose me." (Tr. 266.)

{¶ 6} J.G. then testified that when Perez and V.S. returned from getting haircuts and Walmart, Perez saw that the children were playing with his Legos. Perez grabbed her arm, turned her over and with a regular hand started hitting her on her butt and with his fist on her back. (Tr. 278.) J.G. stated that Jesica told Perez to stop, and when he did not, Jesica hit Perez. Thereafter, J.G.'s testimony was similar to V.S.'s testimony regarding Perez chasing her and Jesica throughout the home until they were able to run outside. After the entire altercation, J.G. testified that the family went to church to decorate for the Pastor's anniversary. J.G. complained to Jesica that her back hurt. The next morning, Jesica took J.G. to the hospital because J.G. stated that her back still hurt. At the hospital, pictures and X-rays were taken of J.G.'s back. J.G. stated that her back had bruises for a week.

{¶ 7} Perez testified that when he and V.S. returned home from the barbershop and Walmart, he saw the younger children playing with his Legos, and J.G. was in the living room watching television. Perez testified that he observed

several damaged boxes and thousands of Legos on the floor. Perez had purchased the retired Lego sets as an investment. Perez planned on keeping the Legos until their value increased and use the profits for a down payment on a house for the family.

{¶ 8} When Perez asked J.G. about the children playing with the Legos, he felt as if she was lying to him. This upset Perez, and he commenced with physically disciplining her. According to Perez, he only struck J.G. on her buttocks, and as he was spanking J.G., Jesica came out of the bedroom and punched Perez in the head about four to six times. Perez stated that he only pushed Jesica away from him to stop her from punching him in the head. He also stated that after Jesica told him to stop hitting J.G., he stopped when he realized that he hit her more than he should have.

{¶ 9} Perez was charged with three counts of domestic violence and two counts of endangering children. At the end of the state's case, the defense's motion for acquittal as it pertains to Counts 4 and 5, domestic violence and endangering children against V.S., was denied. At the conclusion of the trial, Perez's motion for acquittal pursuant to Crim.R. 29 was again denied. After a review of the jury instructions with counsel, the trial court reversed its decision as it pertained to Count 4. The trial court granted Perez's motion for acquittal for the domestic violence charge against V.S. Perez's counsel did not request a jury instruction for parental discipline. Additionally, the trial court did not provide a parental discipline jury instruction to the jury. Perez was found guilty of one count of domestic violence

and one count of endangering children, both counts related to J.G. The jury found Perez not guilty on the remaining charges. Perez filed this appeal assigning two errors for our review:

I.     Appellant was denied the effective assistance of counsel guaranteed by the Sixth and Fourteenth Amendments to the U.S. Constitution and Article I, Section 10 of the Ohio Constitution when defense counsel failed to assert the affirmative defense of parental discipline and request the corresponding jury instruction; and

II.    The trial court committed plain error by failing to give the jury instructions regarding the affirmative defense of parental discipline.

## II.    Ineffective Assistance of Counsel

### A.    Standard of Review

{¶ 10} To establish a claim for ineffective assistance of counsel, Perez must show his trial counsel's performance was deficient, and that the deficient performance prejudiced the defense so as to deprive the defendant of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). To establish prejudice, the defendant must demonstrate there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland* at 694.

{¶ 11} In evaluating a claim of ineffective assistance of counsel, a court must give great deference to counsel's performance. *Id.* at 689. "A reviewing court will strongly presume that counsel rendered adequate assistance and made all

significant decisions in the exercise of reasonable professional judgment." *State v. Pawlak*, 8th Dist. Cuyahoga No. 99555, 2014-Ohio-2175, ¶ 69. Thus, "[t]rial strategy or tactical decisions cannot form the basis for a claim of ineffective counsel." *State v. Foster*, 8th Dist. Cuyahoga No. 93391, 2010-Ohio-3186, ¶ 23, citing *State v. Clayton*, 62 Ohio St.2d 45, 402 N.E.2d 1189 (1980). Additionally, the failure to do a futile act cannot be the basis for claims of ineffective assistance of counsel, nor could such a failure be prejudicial. *State v. Kilbane*, 8th Dist. Cuyahoga No. 99485, 2014-Ohio-1228, at ¶ 37.

**B.    Whether Appellant was Denied the Effective Assistance of Counsel when Defense Counsel Failed to Assert the Affirmative Defense of Parental Discipline and Request the Corresponding Jury Instruction**

{¶ 12} In Perez's first assignment of error, he contends that his defense counsel was ineffective because counsel did not assert the affirmative defense of parental discipline and request a jury instruction. "'Proper and reasonable parental discipline can be an affirmative defense to a charge of domestic violence.'" *Westlake v. Y.O.*, 8th Dist. Cuyahoga No. 107226, 2019-Ohio-2432, ¶ 23, quoting *State v. Hart*, 110 Ohio App.3d 250, 254, 673 N.E.2d 992 (3d Dist.1996). Also, "[p]arental discipline is an affirmative defense to a charge of child endangering." *State v. Cook*, 5th Dist. Fairfield No. 18-CA-43, 2019-Ohio-3650, ¶ 48.

{¶ 13} At trial Perez's defense counsel did not assert parental discipline as an affirmative defense. During Perez's direct examination, he testified that both he and his wife would discipline the children by first giving a time out, then pulling an

ear, and then maybe spanking. However, spanking was always a last resort. (Tr. 348-350.)

{¶ 14} Perez asserted at trial that he was just disciplining J.G for allowing the younger children to open the Lego boxes and play with them. However,

> [n]othing in the domestic relations statute prevents a parent from properly disciplining his or her child. *State v. Suchomski*, 58 Ohio St.3d 74, 75, 567 N.E.2d 1304 (1991). The only prohibition is that a parent may not cause "physical harm" as that term is defined in R.C. 2901.01. *Id.* R.C. 2901.01(A)(3) states that: "Physical harm to persons" means any injury, illness, or other physiological impairment, regardless of its gravity or duration. Injury is defined as "* * * [t]he invasion of any legally protected interest of another." *Suchomski*, citing *Black's Law Dictionary* (6 Ed.1990) 785.
>
> A child does not have any legally protected interest that is invaded by proper and reasonable parental discipline. *Suchomski*; *State v. Luke*, [3d Dist.] Union No. 14-10-26, 2011-Ohio-4330, ¶ 21. "Proper" has been defined as "suitable or appropriate," and "reasonable" has been defined as "not extreme or excessive." *Luke*.

*State v. Zielinski*, 12th Dist. Warren No. CA2010-12-121, 2011-Ohio-6535, ¶ 23-24.

{¶ 15} Nonetheless, the evidence introduced at trial demonstrates that Perez did not give J.G. a time out, pull an ear or give a last resort spanking. V.S. testified that Perez became furious and placed J.G. face down on the couch, hitting her on the back with a closed fist. J.G. testified that Perez was mad, grabbed her arm making "two marks" that "stayed for three days," turned her over and hit her butt with a "regular hand" and then Perez started hitting her back with a fist. (Tr. 278.) J.G. stated that it hurt and she responded to the state's question regarding being punched before in the negative. (Tr. 278-279.) J.G. continued by stating that her mom heard her crying, came out of the room, and instructed Perez to stop hitting

her, but Perez did not listen. The state introduced photo evidence of extensive bruising on J.G.'s back. Also at trial, Perez stated, "[a]fter Jesica asked me to stop hitting the child, after I stopped hitting the child, I had tried to apologize because I knew at that time I realized you know that maybe I hit her more than I should have. You know, I'm not proud of what happened. I'm not justifying anything that happened." (Tr. 354.) On cross, he stated, "I realized that I had spanked her more than I should have and I apologized." (Tr. 370.) Perez also admitted that he had taken things too far. (Tr. 373.)

{¶ 16} Perez's counsel did not explicitly assert the defense of parental discipline but had Perez talk about his methods of parental discipline before the jury. However,

> [b]ecause of the difficulties inherent in making the evaluation of counsel effectiveness after the fact, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. *Strickland*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674, at 689-690.

*State v. Zielinski*, 12th Dist. Warren No. CA2010-12-121, 2011-Ohio-6535, ¶ 52. If the trial court believed Perez caused physical harm to J.G., it might have rejected the parental discipline defense. *See Suchomski*, 58 Ohio St.3d at 75. "We find the challenged actions are nothing more than the product of sound trial strategy that falls squarely within the wide range of reasonable professional assistance. *Strickland* at 689." *Zielinski*, at ¶ 57.

{¶ 17} Perez also asserts that his trial counsel was deficient because counsel failed to request the jury instruction regarding the affirmative defense of parental discipline. Perez must demonstrate that counsel's failure "fell below an objective standard of reasonable representation and violated essential duties to the client," *State v. Gaul*, 5th Dist. Stark No. 1998CA00272, 2000 Ohio App. LEXIS 4601 (Sept. 25, 2000), and demonstrates "a showing of actual prejudice by counsel's ineffectiveness such that but for the counsel's unprofessional error the outcome of the trial would have been different." *Id.* A court may dispose of a case by considering the second prong first, if that would facilitate disposal of the case. *State v. Bradley*, 42 Ohio St.3d 136, 143, 538 N.E.2d 373 (1989), citing *Strickland*, 466 U.S. at 697.

{¶ 18} Perez does not demonstrate how the outcome of the trial would have been different. Before the jury deliberated on the case, the trial court dismissed one of the counts of domestic violence, and the jury found Perez not guilty of one count of domestic violence and one count of endangering children. This demonstrates that the trial court as well as the jury thoughtfully considered the evidence as it related to each count of the indictment. However, the jury did find Perez guilty of domestic violence and endangering children related to the evidence provided at trial as it related to J.G. As such, we cannot not find that trial counsel was ineffective for not requesting a jury instruction that was inappropriate in regards to the evidence presented to the jury and an accurate statement of law. *See Gaul*, 5th Dist. Stark No. 1998-CA-00272, 2000 Ohio App. LEXIS 4601.

{¶ 19} Therefore, Perez's first assignment of error is overruled.

## III.  Jury Instructions

### A.  Whether the Trial Court's Failure to Give the Jury Instructions Regarding the Affirmative Defense of Parental Discipline was Plain Error

{¶ 20} Perez argues that the trial court erred by not giving the jury instruction to consider the defense of parental discipline. Perez's counsel did not request a jury instruction, so all but plain error is waived. *State v. Edgerson*, 8th Dist. Cuyahoga No. 101283, 2015-Ohio-593, ¶ 15.

> Under Crim.R. 52(B), a plain error affecting a substantial right may be noticed by an appellate court even though it was not brought to the attention of the trial court. However, an error rises to the level of plain error only if, but for the error, the outcome of the proceedings would have been different. *State v. Harrison*, 122 Ohio St.3d 512, 2009-Ohio-3547, 912 N.E.2d 1106, ¶ 61; *State v. Long*, 53 Ohio St.2d 91, 97, 372 N.E.2d 804 (1978). "Notice of plain error * * * is to be taken with the utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice." *Long* at 97.

*State v. Bouie*, 8th Dist. Cuyahoga No. 108095, 2019-Ohio-4579, ¶ 42.

{¶ 21} We find that the trial court did not commit plain error by not providing the jury with the instruction that they could consider the affirmative defense of parental discipline.

> A trial court is provided the discretion to determine whether the evidence adduced at trial was sufficient to require an instruction. *State v. Fulmer*, 117 Ohio St.3d 319, 326, 2008-Ohio-936, 883 N.E.2d 1052. A trial court does not err in failing to instruct the jury on an affirmative defense where the evidence is insufficient to support the instruction. *State v. Palmer*, 80 Ohio St.3d 543, 564, 1997-Ohio-312, 687 N.E.2d 285.

*Cleveland v. Beasley*, 8th Dist. Cuyahoga No. 92539, 2010-Ohio-769, ¶ 33.

**{¶ 22}** Additionally,

> [i]n determining whether the presence of sufficient evidence exists in the record to support the giving of a proposed jury instruction, an appellate court should determine whether the record contains evidence from which reasonable minds might reach the conclusion sought by the instruction. *State v. Risner*, 120 Ohio App.3d 571, 574, 698 N.E.2d 511 (3d Dist.1997). However, a trial court does not err in failing to instruct the jury on an affirmative defense where the evidence is insufficient to support the instruction. *State v. Melchior*, 56 Ohio St.2d 15, 21-22, 381 N.E.2d 195 (1978).

*State v. Hinton*, 8th Dist. Cuyahoga No. 99581, 2014-Ohio-490, ¶ 34.

**{¶ 23}** Perez was charged with domestic violence and endangering children with J.G. as the victim. The evidence presented at trial demonstrated that Perez became furious after discovering that his Legos were opened. Perez grabbed J.G. by the arm, bent her over the couch, and begin hitting her on the butt. Initially, Perez hit J.G. with a "regular hand" but he then began to hit her on the back with a fist. Upon hearing J.G. crying her mother, Jesica, attempted to stop Perez by requesting him to "let her go. Don't punch her." (Tr. 292.) When Perez continued punching J.G., Jesica stated that "I saw my daughter in danger facing even death I had to take action to defend my daughter." *Id.*, Jesica punched Perez around the eye. Jesica and J.G. ran into the bedroom but Perez followed. Jesica stated that she tried to shut the door but Perez hit the door hard and it opened. Perez then stated "you know I'm going to continue. You know that I'm mad." (Tr. 293.) Perez continued aggressively following them throughout the house until V.S. placed Perez in a choke hold so that Jesica and J.G. could run out of the house. Perez testified that he went too far and was apologetic.

{¶ 24} We find nothing in the record that supports a jury instruction for parental discipline as an affirmative defense.

> The elements of the crime of domestic violence (R.C. 2919.25[A]) are that a charged defendant must have knowingly caused, or attempted to cause, physical harm to a family or household member.
>
> R.C. 2901.01(C) provides that:
>
> "'Physical harm to persons' means *any injury*, illness, or other physiological impairment, regardless of its gravity or duration." (Emphasis added.)

*State v. Suchomski*, 58 Ohio St.3d 74, 567 N.E.2d 1304 (1991).

{¶ 25} Therefore, we determine that the trial court did not commit plain error by not instructing the jury to consider the affirmative defense.

{¶ 26} Perez's second assignment of error is overruled.

{¶ 27} Judgment is affirmed.

It is ordered that the appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
ANITA LASTER MAYS, PRESIDING JUDGE

EILEEN A. GALLAGHER, J., and
RAYMOND C. HEADEN, J., CONCUR