[Cite as *State v. Brown*, 2021-Ohio-3035.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 110152 |
| v. | : | |
| ANTHONY T. BROWN, | : | |
| Defendant-Appellant. | : | |

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** September 2, 2021

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-19-646242-A

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Amanda Hall, Assistant Prosecuting Attorney, *for appellee.*

Rick L. Ferrara, *for appellant.*

KATHLEEN ANN KEOUGH, P.J.:

{¶ 1} Defendant-appellant, Anthony T. Brown, appeals his convictions following a jury trial. For the reasons that follow, we affirm.

## I. Procedural and Factual History

{¶ 2} In November 2019, Brown was named in a four-count indictment charging him with four counts of felonious assault. Each count contained notice of prior conviction and repeat violent offender specifications. Brown elected to bifurcate the trial, with the jury only considering the base offenses — he stipulated to the specifications. The following testimony and evidence was presented at trial.

{¶ 3} During the late evening of November 17, 2019, Alex McKeller ("Alex"), Leroy Harris ("Leroy"), Jessie Rodriquez ("Jessie"), and Leroy's girlfriend, Melissa, (last name unknown) drove to Alex's mother, Coleetha Brooks's ("Coleetha") apartment. When they arrived, Brown, Coleetha's boyfriend of approximately nine years, was already present.

{¶ 4} Alex testified that when they arrived at his mother's house, it was "party time" — he was drinking and smoking marijuana; he stated that he was drunk. At some point in the evening, Coleetha wanted Brown to leave her house. According to Alex, Brown stated that he was not leaving, so he and Leroy "hemmed [Brown] up against the wall and escorted him toward the door." Alex described the action as picking up Brown from his seated position. He stated that during the incident, he fell backwards, but Leroy was able to escort Brown outside. Alex testified that when he went outside, he saw Leroy laying on the ground with a "cut." He admitted that he did not see what happened outside between Leroy and Brown, but stated that Brown "cut" Leroy. Alex testified that he then felt like he was punched, but realized that he had, in fact, been stabbed. And although he did not see Brown with a knife,

he testified that Brown stabbed him. According to Alex's medical records, Alex was "acutely intoxicated" and told the treating medical team that "he got into an altercation with another individual, resulting in him being stabbed to the [left lower quadrant of his abdomen] with a large 6-inch knife."

{¶ 5} Coleetha testified that she and Brown had been dating off and on for the past nine years. She stated that Alex told Brown to leave her house, and Brown responded to "make him." According to Coleetha, her son and Leroy took Brown outside, but she did not see what occurred outside between the men. She testified that Alex came back in the house stating that he was stabbed, and then Leroy came inside stating he was stabbed in the arm. Coleetha testified that she never saw a weapon.

{¶ 6} Leroy testified that Brown stabbed him following an altercation inside of Coleetha's house. He stated that after Coleetha expressed that she wanted Brown to leave, Alex and Brown stared each other down. Leroy stated that he intervened and walked Brown out the door. He stated that as he was about to shut the screen door, Brown turned around and stabbed him in the collarbone. He stated that he then fell backwards and saw Brown coming at him swinging a knife, which he described as "not like a pocketknife" but "a little knife you filet a fish." (Tr. 230.) Leroy stated that he began kicking his feet to protect himself. Leroy showed the jury the scar left from the injury and stated that he experiences pain and limitation in movement. On cross-examination, Leroy denied (1) being intoxicated, (2) telling the police officers at the hospital that he sustained the injury while being robbed,

and (3) tussling with Brown. According to Leroy's medical records, however, it was noted that he was "intoxicated," and told the treating medical team that he "was walking down the street when an unknown assailant tried to rob him and stabbed him once in the [left side of his] neck."

{¶ 7} Jessie testified that she and Alex have been dating for about a year, but at the time of the altercation, they had only been dating for about 20 days, and that this was the first time meeting his mother. She stated that Alex and Leroy "stood [Brown] up," pinned him against the wall, and escorted Brown outside. She stated that words were then exchanged between Leroy and Brown, causing Leroy to step outside. According to Jessie, Melissa yelled that Leroy and Brown were about to fight, causing Alex to go outside. Jessie testified that both of the men tried to punch Brown, but missed because they both had been drinking. She stated that as Leroy swung at Brown, he missed, and fell backwards while holding his neck. She testified that Alex and Brown both tried punching each other, but both missed. Alex, however, fell down holding his side and stated that he was bleeding. Jessie then called 911; her call was played for the jury. Jessie stated that she never saw a weapon of any kind, including a knife or boxcutter, but had never known Alex or Leroy to carry a knife. She speculated that Brown must have had a knife and stabbed Alex because no one else was around. She further stated that she did not see Brown bleeding when he ran away from the scene.

{¶ 8} Cleveland Police Officer Neil Pesta testified that he arrived on scene. He identified the video taken from the body camera he was wearing that evening.

The video showed other officers and a group of individuals standing outside of Coleetha's apartment building. Once inside the apartment, Officer Pesta's body camera recorded some blood found inside the apartment. His body camera also captured the interaction between Alex and the police, including Alex belligerently refusing assistance by EMS and the police. The jury was able to observe Alex holding a towel on his lower left abdomen area and his demeanor.

{¶ 9} Brown testified in his own defense. He stated that when he got up to leave the apartment, Leroy grabbed him by the collar and tossed him around the apartment. Brown stated that Alex then pushed him up against the wall. According to Brown, he was able to run out the door, but both Alex and Leroy chased after him and they began tussling. He stated that Melissa stepped between them, which allowed him to run to his car and leave. Once inside the car, Brown noticed that his finger was severely cut and that he was bleeding profusely. He stated that he drove to a nearby gas station, which was across the street from the Fourth District Police station, and obtained some towels to help stop the bleeding. From there, he drove to his son's house in Garfield Heights, and then back to the police station. It was at the station when he learned that both Alex and Leroy had been injured during the altercation. Brown was taken into police custody, but transported to the hospital to receive medical treatment for his finger.

{¶ 10} Brown denied that he stabbed Alex and Leroy and denied ever carrying or using a knife in self-defense. This response precipitated Brown to elaborate about a prior stale conviction where he was accused of using a knife and

committing felonious assault. He denied that he committed the offense, and stated that he was the one injured, yet the only one charged. He further stated that he pleaded guilty, even though he was innocent. In response, the state asked Brown about the prior conviction, including the details surrounding the offense and that he was found guilty following a trial, not as a result of pleading guilty.

{¶ 11} The jury found Brown guilty as charged and due to the prior stipulation, the court found him guilty of all specifications. Following merger of allied offenses, the court ordered Brown to serve two years in prison, but advised him of the implications of being sentenced under the Reagan Tokes Law. Brown appeals, raising three assignments of error.

## II. Use of Prior Convictions

{¶ 12} In his first assignment of error, Brown contends that the trial court abused its discretion under Evid.R. 609 by allowing the state to raise his convictions from 1993, including details regarding his conduct in the prior case, and draw a comparison to the alleged similarities with the present case, violating Ohio law and his right to due process.

{¶ 13} "[A] trial court is vested with broad discretion in determining the admissibility of evidence in any particular case, so long as such discretion is exercised in line with the rules of procedure and evidence." *Rigby v. Lake Cty.*, 58 Ohio St.3d 269, 271, 569 N.E.2d 1056 (1991). A trial court abuses its discretion when its judgment is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 14} During trial, Brown testified in his defense denying that he stabbed Alex and Leroy. During cross-examination, the state asked Brown whether he had a "knife that night?" Brown responded that he did not, and further denied that he carried a knife. The state then asked, "You never carry a knife?" Brown again stated "No." After a sidebar conversation, the state continued questioning Brown about ever possessing a knife. He stated that he only carried a knife for work and then denied that he ever used a knife in self-defense, and that he did not use a knife as a weapon during the altercation with Alex and Leroy. The following exchange then took place:

Q. You've never used a knife as a weapon?

A. I never used a knife as a weapon. If you're speaking of anything in my past, I was the one that had got[ten] injured very badly in my past. I have never [done] anything to anyone with a weapon.

Q. You're past, you mean when you served seven years in prison?

A. Yes, for getting stabbed.

[Objection overruled].

Q. For felonious assault?

A. Yes, I was the one stabbed and I did time. I was the only one in the hospital or anything else in that whole matter.

Q. Like this incident, you were the only one who was seriously injured.

* * *

A. I have never attacked anyone with a weapon in my life.

Q. But you were convicted?

A. Of being — for felonious assault for having a stab wound. I went to the hospital.

* * *

Q.  You were convicted for felonious assault for — let me finish my question.  For cornering a woman in the hallway with a knife to her neck?

A.  No, no, I was stabbed with a knife.  No one — what you're speaking is fiction now.  No one had ever been attacked by me.  When you see a knife in my past, I have the wound, I have the hospital reports.  No one else.

Q.  You were convicted and served seven years?

A.  For — because I pleaded guilty.  I didn't know that if you didn't do it, you don't do that.  I don't do it no more.

[An off-the-record side-bar conversation occurred].

Q.  Mr. Brown, it's your testimony you pled in that case? * * * To the case where you're claiming you did nothing wrong, you were stabbed and you pled to felonious assault?

A.  I pleaded out.

(Tr. 293-297.)  The state then showed Brown a journal entry of his prior conviction, whereupon Brown read that he was "found guilty" of "felonious assault."  The trial court then gave the jury a limiting instruction that the prior conviction was offered for impeachment purposes only.  (Tr. 297.)  Thereafter, the state clarified with Brown that he was untruthful when he stated that he pleaded guilty.  (Tr. 298.)

{¶ 15} Based on the record before this court, we find that the trial court did not abuse its discretion in allowing the state to question Brown about the facts and circumstances of his prior conviction because Brown denied ever using a knife as a weapon, and then voluntarily attempted to explain the circumstances and details

surrounding the prior conviction. Accordingly, he opened the door, which allowed the state to impeach Brown by self-contradiction.

{¶ 16} Self-contradiction involves the use of a witness's own prior inconsistent statement or prior inconsistent conduct to contradict the witness's testimony in court, a situation governed by Evid.R. 613. Extrinsic evidence is not admissible under Evid.R. 613(B) unless a proper foundation is laid to its admission. *State v. Hinton*, 8th Dist. Cuyahoga No. 99581, 2014-Ohio-490, ¶ 42. To establish a proper foundation, (1) the witness must be asked about the inconsistency; (2) the witness is given an opportunity to admit, deny, or explain the inconsistency; and (3) the opposing party is given an opportunity to question the witness regarding the inconsistency. *Id.*, citing *State v. Martinez*, 8th Dist. Cuyahoga No. 97233, 2013-Ohio-1025, ¶ 15. If the witness denies making the statement or engaging in prior conduct, extrinsic evidence is generally admissible if it relates to "'a fact of consequence to the determination of the action.'" *Hinton* at ¶ 42, quoting Evid.R. 613(B)(2)(a); *see also* Evid.R. 613(C).

{¶ 17} In this case, the state laid the proper foundation for admitting extrinsic evidence under Evid.R. 613. First, the state asked Brown about this inconsistent conduct — whether he ever used a knife as a weapon. Second, Brown had the opportunity to admit, deny, or explain his statements and past conduct of carrying a knife. Instead of admitting to his past conduct, he denied that he ever used a knife as a weapon or that he attacked someone with a knife. Moreover, Brown voluntarily chose to mention his prior conviction before the state even questioned him about it.

The state rebutted Brown's denial and expanded on his prior conviction by questioning him on the circumstances surrounding the conviction. When Brown further denied the details surrounding the conviction, claiming that he was the one stabbed and injured during that incident, the state was permitted to cross-examine Brown about this conviction, which he again mischaracterized contending that he pleaded guilty, rather than being found guilty at trial. The third foundational requirement was satisfied when Brown was given the opportunity on redirect to explain the inconsistency when he commented that the prior conviction occurred over 20 years ago and when he was a "young fool."

{¶ 18} Finally, Brown's statement and conduct about whether he ever used a knife as a weapon related to the ultimate fact in question — whether Brown used a knife to stab Alex and Leroy. Therefore, extrinsic evidence was admissible for the purpose of impeaching Brown with prior inconsistent conduct.

{¶ 19} We find that had Brown admitted to using a knife as weapon on a prior occasion, the state would not have been permitted to further question or elaborate on the circumstances of the felonious assault conviction. Additionally, it was Brown who (1) mentioned his prior conviction, (2) chose to elaborate on the circumstances surrounding his conviction, and (3) mischaracterized his conviction by asserting that he was not guilty of that offense, or that he pleaded guilty, despite being found guilty at a trial. Admitting Brown's prior conviction was proper under Evid.R. 613, and his first assignment of error is overruled.

## III. Effective Assistance of Counsel

{¶ 20} Brown contends in this second assignment of error that he was denied effective assistance of counsel when his defense counsel failed to request an additional restriction on testimony and an instruction regarding his prior conviction from 1993. Without explanation, Brown further contends that counsel should have been more adamant in objecting to the state's use of his prior conviction.

{¶ 21} To establish ineffective assistance of counsel, a defendant must demonstrate that counsel's performance fell below an objective standard of reasonable representation, and that he was prejudiced by that performance. *State v. Drummond*, 111 Ohio St.3d 14, 2006-Ohio-5084, 854 N.E.2d 1038, ¶ 205, citing *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

{¶ 22} During Brown's cross-examination, the trial court gave the jury a limiting instruction regarding Brown's prior conviction. The court stated:

> I'm going to give a cursory instruction to the jury. This has been offered to impeach the credibility or believability of the witness. You cannot use that prior conviction as a basis to convict him in this case. In other words, you can't use the fact that he acted in conformity with the prior act. It's totally improper. And you cannot use that as a basis to convict in this case.

(Tr. 297-298.)

{¶ 23} Additionally, during the jury charge following the close of all evidence, the trial court gave the jury the following instruction:

> Evidence was received about the commission of a crime other than the offense with which the defendant is charged in this trial. That evidence will only be received for a limited purpose. It was not received, and you may not consider it to prove the character of the defendant in order to show that he acted in conformity or in accordance with that character.

That is an important instruction. It was used merely to impeach him with respect to whether he had ever held a knife before. You can't use it to say he acted that way in 1992, therefore, that's evidence that the did this in 2019. I strongly emphasize that instruction.

(Tr. 346-347.)

{¶ 24} We have previously determined that the state's use of Brown's prior conviction was admissible pursuant to Evid.R. 613. Therefore, counsel's alleged deficiency in failing to adamantly object is rejected. Additionally, Brown does not identify what additional instruction the court should have given the jury regarding the limited use of his prior conviction. Accordingly, Brown has failed to demonstrate that counsel's performance was deficient by failing to request any further instruction. His second assignment of error is overruled.

## IV. Manifest Weight of the Evidence

{¶ 25} In his third assignment of error, Brown contends that his convictions for felonious assault are against the manifest weight of the evidence.

{¶ 26} A manifest weight challenge questions whether the state met its burden of persuasion. *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 12. A reviewing court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed, and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 388, 678 N.E.2d 541 (1997). A conviction should be reversed as against the manifest weight of the evidence only in the most "exceptional case in which the evidence weighs heavily against the conviction." *Id.*

{¶ 27} In this case, it is undisputed that both Alex and Leroy sustained stab wounds after escorting Brown from Coleetha's home. The jury heard testimony from Jessie, who stated that she witnessed the altercation and that Leroy attempted to punch Brown, but missed and fell backwards holding his neck. She stated that Alex then attempted to punch Brown, but missed and fell to the ground holding his side, while stating that he was bleeding. Based on her observations, she speculated that Brown must have had a knife and cut them because no one else was "swinging at them" and they "didn't stab themselves." (Tr. 220.)

{¶ 28} The jury heard varying stories about what occurred that night, including contradictory and inconsistent testimony from Leroy, Alex, and Brown. Alex stated that Brown stabbed them, despite not seeing him with a knife. Leroy also stated that Brown stabbed him, despite telling medical personnel that he was stabbed by an unknown assailant. Although Leroy testified that he saw Brown with a knife — no other witness stated that they saw Brown with a weapon.

{¶ 29} Brown admitted that he tussled with Alex and Leroy, but denied that he stabbed either of them. He insisted that his finger was severely cut during the altercation, suggesting that he was cut by one of the men during the altercation. However, Brown's credibility was called into question when he told the jury that he left Coleetha's apartment despite being severely injured and bleeding profusely, and drove to his son's house before seeking medical help or reporting the alleged attack to police. Witness credibility rests primarily with the trier of fact because the jury is in the best position to view the witnesses and observe their demeanor, gestures, and

voice inflections — observations that are critical to determining a witness's credibility. *State v. Clark*, 8th Dist. Cuyahoga No. 94050, 2010-Ohio-4354, ¶ 17, citing *State v. Hill*, 75 Ohio St.3d 195, 205, 661 N.E.2d 1068 (1996). The jury is free to accept or reject any or all the testimony of any witness. *State v. Smith*, 8th Dist. Cuyahoga No. 93593, 2010-Ohio-4006, ¶ 16. Here, the jury chose to disbelieve Brown's version of events and find that he caused serious physical harm to both Alex and Leroy. Accordingly, this is not the exceptional case where the evidence weighs heavily against the conviction demonstrating that the jury clearly lost its way in finding Brown guilty as charged. The third assignment of error is overruled.

{¶ 30} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
KATHLEEN ANN KEOUGH, PRESIDING JUDGE

MICHELLE J. SHEEHAN, J., and
MARY EILEEN KILBANE, J., CONCUR